**AMERICAN HATTERS & FURRIERS CO., Inc., v. DANBURY & BETHEL FUR CO.**

**SAME v. EASTERN FUR PRODUCTS CO. et al.**

**SAME v. GEBERT et al.**

Nos. 1989, 1990, 2035.

District Court, D. Connecticut.

Feb. 5, 1931.

Robert S. Blair, William T. Knieszner, and George Crompton, Jr., all of New York City, for plaintiffs.

Victor D. Borst, of New York City, for defendants.

THOMAS, District Judge.

In these three patent cases brought by the same plaintiff the patents in each suit are identical, and the alleged infringing material is identical. The cases were tried together, and they will be discussed and decided in one opinion.

The bill of complaint in each case is in the usual form and charges the defendants with infringement of the Parks patents Nos. 1,507,891 and 1,507,892, the former upon an application filed June 30, 1923, and the latter upon an application filed the same day and both issued on September 9, 1924. As all formal matters have either been stipulated or conceded, the questions presented are whether the patents in suit are valid, and, if so, whether the defendants infringe them.

The patents in suit relate to the art of carroting fur for the purpose of manufacturing felt hats made for and used by both ladies and gentlemen. A logical outline of the facts requires that we get a clear understanding of what these alleged inventions are in order to properly test the validity and scope of the corresponding patents. It should be noted that, although there are two patents in suit, and strictly speaking two inventions and that they deal with different statutory classes of invention, nevertheless, for the sake of brevity, they may be referred to as a single invention.

Nearly all felt hats are made from the fur of small animals, chiefly rabbits. In the manufacture of felt hats it is the common practice to subject the. fur to a preliminary treatment known as "carroting." As to the precise chemical or structural changes brought about in the fibers of the fur by this treatment, there is a lack of agreement among the experts. What these changes are does not seem to me to be of real importance. Some marked change is wrought. The raw fur, feltable with great difficulty, if at all, becomes "carroted" and then felts with ease.

This admitted alteration of the character of the fur is important. The molecular or microscopic actions by which it is brought about are not.

At the time of the Parks inventions, "carroting" of fur was accomplished by brushing on the fur while still on the skin a solution containing mercury. This solution is poisonous and mercuric poisoning among the workmen has occurred to a deplorable extent, a fact dwelt upon in certain of the defendants' exhibits. The parties agree that the mercuric solution stains the fur, and consequently seriously hampers its use on fur of light color. Nothwithstanding this, the use of the mercury carrot was universal when the Parks invention was made and had been for a half century or more prior thereto, save for two or three sporadic and short-lived attempts to use caustic soda. Defendants' proofs of these efforts to employ caustic soda are of questionable force, but if we give them a probative value, which they do not possess, the evidence shows that caustic soda as a carrot was a failure. It cannot be seriously argued that the entire hatting industry, which was forced to employ a chemical that endangered the workmen and stained the fur, thrice completely rejected a nonpoisonous, cheap, colorless, and unpatented substitute, if the substitute could be made to do the work.

The patents in suit are No. 1,507,892 on a process of carroting and the product of that process, and No. 1,507,891 for a composition of matter or solution suitable for use as a carrot. The first of these prescribes, as a preferable use of the invention, the brushing on the fur of caustic soda and hydrogen peroxide. The claims range from broad definitions of the solution and its application to specific mention of the above constituents and even to prescription of the strength of the solution. This is some times expressed as sodium peroxide in water, but the parties agree that this instantly forms a solution of sodium hydroxide (caustic soda) and hydrogen peroxide.

The second patent describes the above solution and its making and claims it as a composition of matter in claims of varying scope. The details of these claims are not here of interest, as infringement is not contested.

That the Parks carrot works, and that it does away with the poisonous and staining effects of the mercury carrot, is not denied. Plaintiffs urge several marked advantages over mercury. Defendants appear to question only one, namely, whether the Parks carroted fur makes a hat of the strength of the mercury-carroted fur. Even if it were lacking in this particular and its field were restricted to hats of the lighter type, there still remain points of superiority sufficiently potent to more than compensate for such a deficiency. However, defendants' proofs of this alleged defect are based mainly on the opinions of interested witnesses better qualified to pass on fur than on hats. These proofs are refuted by the testimony of the witness Hodgson, a hat manufacturer, who used the Parks carrot for years, turning out large quantities of mens hats of high quality and sold at high prices with full satisfaction to the purchasers. Mr. Hodgson's testimony, substantiated by the production of actual hats of high quality which had seen some years of service, was practically conclusive on this point. It would follow, therefore, that defendants have shown no particular in which the Parks carrot is inferior to mercury.

Defendants argue that Parks made but one invention for which he was entitled to a single patent. On the face of the patents in suit, Parks invented a novel and useful composition of matter. He applied for his two patents on the same day; they were issued on the same day and both are here in suit. The statutes recognize these as inventions of different classes, and the Patent Office, by issuing separate patents without objection, evidently found the filing of separate applications to be in accord with its practice and would, presumably, have disapproved of an attempt to consolidate them into a single application and patent. Whether the invention which Parks made in carroting processes can be mentally divorced from the invention which he made in compositions of matter seems to me to be a fruitless metaphysical speculation here. Each, if novel and useful, is entitled to patent protection, and a party who has infringed claims for both inventions cannot be seriously concerned as to whether they are found in one or in two patents. Certain it is that one of the Parks patents cannot be considered as prior art against the other. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co. (C. C. A.) 22 F. (2d) 259. It seems clear that one could not be found invalid in view of the prior art and then used to invalidate the other, as we are bound by the decision of the Circuit Court of Appeals for the Second Circuit in H. C. White Co. v. Morton E. Converse & Son Co., 20 F.(2d) 311. Such a procedure, apparently urged by the defendants, is repugnant to equity.

The Parks inventions worked no immediate transformation of the carroting art. Mercuric carrot is still widely used by the industry. This fact, however, has no great significance. To change over an established practice to a more costly procedure in an old and conservative industry is no light task. When this change involves a localization of the source of supply, and then to bring it about in the face of patent infringement, requires long and patient effort.

The subject-matter of infringement involves no serious questions. The solution used, its methods of use, and the product made by defendants are all precisely in accordance with the teachings of the Parks patents. Even the preferred strengths of solution were used, and the added constituent, carbonate of soda, is admitted to be surplusage.

The defendant Eastern Fur Products Company claims that it was not responsible for the infringement by Zwyner, its president and general manager. The testimony of Zwyner directed toward the absolution of his company from this infringement is vague and seems to relate only to the early stages of this work. Even Zwyner repeatedly uses the plural pronoun in talking of his work with this carrot, and defendants' witness Hickey admits that he received it from the company. In any event, this corporation has shown no sufficient reasons in order to escape responsibility for the activities of its chief executive officer to whom it apparently furnished facilities for infringement, and so it must be held to be a contributory, even if not a direct, infringer.

The main issue which defendants present is, in its essence, validity, and on that issue they place their reliance on the caustic soda of prior art patent No. 501,797 to Lussigny and the hydrogen peroxide of prior art patent to Tweedy. Both of these patents were considered and discussed by the Patent Office in connection with the Parks' application. Defendants urge no other prior patents as more pertinent than these two. Even the defense of aggregation of these two patents, which defendants stress, was raised and abandoned by the Patent Office. Defendants claim that the Examiner was deceived by representations made on behalf of the Parks' application concerning caustic soda as a carrot. Such, however, was not the case. The facts in this connection were conservatively set forth, and the record here shows that the case for patentability was under, rather than over, stated to the Examiner. An infringer who has adopted the entire substance of a patented invention and offers in defense only a claim of invalidity based on matters considered and cast aside by the Patent Office in allowing the patent assumes a heavy burden.

In weighing this defense the use of hydrogen peroxide as a carrot requires no consideration. Both parties apparently admit that it is inferior as a carrot to caustic soda, and, if the latter is insufficient to invalidate the patent, the former must fall with it.

We have already referred to the futile attempts to introduce caustic soda commercially. Some reason must underlie these failures. Plaintiffs have offered strong proofs to the effect that the practical manufacture of hats carroted with this substance involved serious difficulties, and that the hats thus made were subject to rapid deterioration. Defendants respond that the tests involved in these proofs were ex parte and thus entitled to little weight. However, the testimony of Rogers, plaintiffs' expert, was straightforward and was corroborated by the witness, Hodge, and defendants also offered the results of ex parte tests which did not controvert plaintiffs upon these points. If additional proof were needed as to the character of caustic soda as a carrot, it is found in the blunt admission of defendants' expert that no one would use it and its use results only in trouble. It seems clear that there must have been a reason for this sweeping condemnation by defendants' expert, and a plausible explanation lies in the defects to which plaintiffs have directed attention.

Defendants have made repeated and strenuous attacks upon the character and standing of plaintiffs' expert, Dr. Rogers. In justice to him it should be noted that he appeared exceptionally well qualified in a professional way and created a favorable impression by his frankness. His candid admission that all theories, including his own, were possibly erroneous was particularly refreshing.

These defendants were at liberty to use caustic soda alone. They increased, however, the cost and complication of their manufacture by adding hydrogen peroxide. The only explanation they advance is that they used the peroxide for bleaching purposes. But they used no ordinary bleaching process such as they employed with the only specimen of even partially bleached fur brought into this case. What is even more important is the fact that they do not bleach the hats and must know it. Their witnesses repeatedly failed in efforts to distinguish any difference in appearance between bleached and un-

bleached hats. The explanation that each hat supposedly bleached by defendants must have been stained or soiled by impure water to bring it back to the same color as those unbleached is unconvincing, particularly as we must then assume that each of the latter hats was treated with clean water only. Still more difficult to accept is the proposition that defendants were trying to bleach the fur to enhance its price, even though the hats were no lighter and that the hat manufacturers continued to pay a higher price for the fur, not knowing that the hats would gain nothing in lightness of color. It is to me an inescapable conclusion that these defendants knowingly use these constituents in carroting simply to secure a carroting action superior to that of either used alone and having advantages not found in any practicable carrot of the prior art.

This bears heavily on the defense of aggregation. The combination is much better than any amount or strength of either constituent. The action of one or both is evidently improved by the action or presence of the other, otherwise a double amount, or successive applications of one alone, would give results equal to those of the patented combination, which is far from the case. I find no instance in the prior art where it is suggested that by successive or conjoint use of any two carrots an effect better than that of either could be secured. It would naturally be supposed that to add an inferior carrot would impair the effectiveness of that to which it was added. In the Parks carrot, not only is this anomalous effect gained, but it appears that it is achieved in part at least, even though the two solutions be successively applied instead of mixed and applied together. Each appears to have an action complementary to, and dependent upon, that of the other. The test tube experiments of Dr. Rogers were interesting and instructive in that connection and strongly supported the above conclusion. Also the adoption by Dr. Rogers of the test proposed by defendants' expert Dr. Bohn gave further evidence of the excellence of the Parks' carrot.

If direct chemical interaction between the two constituents was required, it is found in the admitted fact that the caustic soda, aside from its carroting effect, acts upon the hydrogen peroxide to stimulate its delivery of oxygen, thus rendering the use of a separate alkali, such as carbonate of soda, superfluous.

Facing these facts the remaining defense of aggregation must fail. To make a carrot of the excellence of that of Parks by adding to one, which was a failure, another which was worse, is a result which is not old or obvious, but new and surprising.

The defendants here are under the burden of establishing invalidity by convincing proof. Not only are no such proofs found in this record, but, on the contrary, I am convinced that both patents in suit are valid and represent a meritorious advance in the art. Infringement being clear, it follows that there may be a decree for the plaintiffs in the usual form in each of the three cases sustaining both patents and providing for an injunction, reference, and accounting, together with costs of suit.