LEWIS INVISIBLE STITCH MACHINE CO.
v. POPPER et al.
Nos. 6869, 6989.

District Court, E. D. New York.

Feb. 5, 1934.

860

Victor D. Borst, of New York City, and S. George Tate, of Washington, D. C., for plaintiff.

Mock & Blum, of New York City, for defendants.

CAMPBELL, District Judge.

On consent, the two above entitled actions were consolidated on the trial.

These are suits for alleged patent infringement, the first based on patent No. 1,-891,308, issued by the United States Patent Office to Horace F. Gruman, assignor to Lewis Invisible Stitch Machine Company, for combined seaming and pinking machine, granted December 20, 1932; the second based on patent No. 1,909,346, issued by the United States Patent Office to Horace F. Gruman, assignor to Lewis Invisible Stitch Machine Company, for combined seaming and pinking machine, granted May 16, 1933.

The corporate identity of the plaintiff and the title of the two patents in suit in the plaintiff, as alleged in the two bills of complaint, are stipulated.

The court has jurisdiction as both of the defendants are residents of the borough of Brooklyn, in this district.

The defendants are individuals and brothers.

In both bills of complaint it is charged that the defendants are copartners conducting a business within the borough of Manhattan, city, county, and state of New York, under the name Popper Machine Company, where the alleged infringing business is carried on.

I am convinced on all the evidence that the defendant Max Popper was the proprietor of the business of Popper Machine Company at the time of the commencement of the first suit, and has continued as such proprietor, and that the defendant Anton Popper has had and had no financial interest in Popper Machine Company, but conducts his own independent business at the same address as Popper Machine Company, to wit, No. 117 Bleecker street, and also works for his brother Max Popper on a salary.

Therefore the suit should be dismissed as to the defendant Anton Popper.

The defendant Max Popper has by answers interposed in both suits the defenses of invalidity and noninfringement, and in the second suit the additional defense of double patenting, in view of what is patented in the first patent in suit, and he will hereinafter be referred to as the defendant.

The two patents in suit relate to a machine which simultaneously performs two functions, namely, the stitching of two pieces of cloth together to form a seam, and the pinking of the edge of the cloth adjacent the seam. The purpose of the pinking is to prevent a raw edge of a woven piece of cloth from fraying or raveling, and it consists in serrating the edge by cutting closely adjacent shallow V-notches into the edge. It has been customary in domestic sewing to cut the notches in the raw edges with shears. From the evidence it appears that, excepting shears, the only pinking tool ever provided and ever used prior to plaintiff's machine, made under the patents in suit, was a wheel, the periphery of which was provided with a zigzag cutter, and which rolled over the cloth to pinch off the edge. This wheel was not, however, combined with a sewing machine so as to operate concomitantly with the formation of a seam.

*As to Patent No. 1,891,308.*

This patent is embodied in the first type of Lewis machine, Plaintiff's Exhibit 12. The main shaft 7 in the sewing machine head is connected to operate the needle bar 8 and the needle 9 in the usual way to co-operate with the looper underneath the bed of the machine, to make the stitches in the cloth traveling over the bed under the needle. Alongside of and close to the needle 9 is a vertically reciprocatory upper knife 35, which is disposed on the lower end of a shank 44 and co-operates with the lower horizontal and relatively stationary knife 57. This lower knife is, in the patent, termed the ledger blade. The upper or movable knife is V-shaped and co-operates with the V-shaped sides of the triangular opening in the ledger blade.

The knife 35 is reciprocated by a bell crank lever 27 oscillated by an eccentric on the main shaft 7. This bell crank lever has a hub or sleeve bearing portion which surrounds and bears upon an eccentric axle portion 25 extending from the hub 24 of a pulley 22 which is mounted upon a jack shaft 20 parallel to the main shaft 7. On opposite ends of the sleeve portion of the bell crank 27 are oppositely extending arms 28 and 29. The arm 28 is pivotally connected to one end

of a link 31, the other end of which surrounds an eccentric 32 fixed on the main shaft 7. The arm 29 is pivoted to one end of a link 46, the other end of which is pivoted on a screw stud which screws into the shank 44 of the upper or movable knife and travels in a slot in the guide holder 37 for the shank 44.

With every rotation of the main shaft 7 and consequently of the eccentric 32 thereon and the arm 28, the entire bell crank lever is given one complete oscillation which is transmitted through the link 46 to the upper knife 35, and that knife is thereby given a complete reciprocation for every complete rotation of the main shaft 7.

The purpose of the eccentric axle 25 on the pulley 22 is to render the reciprocation of this knife 35 effective only on selected reciprocations of the needle 9. As shown in the patent, the device will operate on a two to one ratio, but is operated to cut synchronously with the stitching. This is necessary for the reason that the feed dogs operate to move the cloth along as the needle is rising, and the pinking cut can only be made when the cloth is stationary. The knife 35 descends as the needle descends, though only on alternate reciprocations of the needle.

The pulley 22 is shown in the patent as belted to a smaller pulley 21 on the main shaft; the angular movement of the pulley 22 is one-half that of the pulley 21. The rotation of the pulley 22 rotates the eccentric axle member 25 and serves to raise and lower the bell crank lever 27 and its connected parts in a ratio of one to two to the oscillations of the bell crank lever. The eccentricity of the axle member 25 is sufficient to raise the knife 35 out of operative relation with the ledger blade when the eccentric member 25 is in the uppermost position. While the bell crank lever oscillates and reciprocates the knife 35 once for every rotation of the shaft 7, every other oscillation of the bell crank lever is idle because it is raised up to inoperative position by the movement of the eccentric member 25 at the time of the idle oscillation.

Plaintiff's Exhibit 12, which embodies the disclosure of the patent No. 1,891,308, employs gearing in place of the pulleys 21 and 22 and the belt 23 connecting them, and otherwise, except for the transference of the spring attached to the ledger blade from the top of the bed to the bottom, Exhibit 12 is an exact embodiment of the disclosure of the patent No. 1,891,308.

Means are provided to throw the pinking mechanism out of operative position when it is desired to use the machine only for stitching, but as this has nothing to do with the issues of these suits, it will not be further referred to.

The relative angles and the co-operative relation of the two knives is an important feature of the patent.

The angle of the walls of the movable knife is somewhat less than that of the stationary knife. See Fig. 8 of the patent. The bottom of the cutting edge of the movable knife is beveled so as to slope downward from the apex toward the rear. The ledger blade is slidably mounted in guides and is urged rearwardly by a spring 62. The bottom or cutting edges of the movable knife being beveled, the contact of each edge with the co-operative edge of the lower knife or ledger blade is a point contact. At the beginning of the cutting operation, the apex of the upper knife is substantially in advance of the apex of the lower knife. See Fig. 7 of the patent. As the upper knife descends, the point of contact between the cutting edges on each side of the V travels forward until the two points come together at the two apices, which are then in engagement. To permit this there must be a relative backward movement of the upper knife so as to bring its apex into register with the apex of the lower knife. In the construction shown, the mounting of the upper knife does not permit it to yield backwardly, but instead the lower knife is permitted to yield forwardly against the tension of the spring 62. In this way a typical scissors action is obtained simultaneously on both sides of the V, and the cuts simultaneously approach each other until they meet at the then common apex of the two cutters. Both cutting edges of the upper knife cross the co-operative cutting edges of the lower knife, and those points of crossing advance toward the apex at the same time that the upper knife relatively recedes to bring its apex eventually into coincidence with that of the lower knife. This relative action of the Lewis knives can be seen by an examination of the two Lewis machines, Exhibits 12 and 13.

Means are provided to guide the two Lewis knives together into cutting relation and maintain the movable blade in co-operative relation with the ledger blade, and in the construction shown are what are termed "heel" extensions on the upper blade. Some such expedient is necessary to prevent the upper blade from escaping from the lower blade, in its uppermost position.

*As to Patent No. 1,909,346.*

The construction disclosed in this patent is embodied in plaintiff's commercial or No. 91 machine, exemplified in Plaintiff's Exhibit 13. So far as the knives are concerned and their coactive relationship, there was no change between the original or No. 90 machine and this commercial machine of plaintiff. There are, however, some real differences mechanically. Instead of a knife guided in vertical guides and operated by a bell crank lever, which is lifted up on every other stitch, there is employed in this machine of patent No. 1,909,346 a pivoted lever for carrying the movable knife. This lever is disposed underneath the overhanging arm of the sewing machine head, and is forked at its rear end so as to straddle the upright portion of the head with which it is pivoted. The movable knife is carried on the front end of the pivoted lever. The length of the radius of movement of the knife is such that to all intents and purposes, the knife moves up and down vertically as in the former machine. The lever is braced upwardly by a spring, and is actuated downwardly by a cam which is driven from the main shaft of the sewing machine head. The cam is numbered 22 in the patent and is mounted on a jack staff with a larger gear 18 of a pair of drive gears 17, 18; the former being mounted on the main shaft.

There is no departure from the knife construction described and illustrated in the patent No. 1,891,308 and embodied in the machine No. 90.

In 1930 the No. 90 machine was developed and sold by plaintiff; the first being sold to a concern in Kansas City.

The mechanism was complex, and this was so apparent that only four or five were sold. As a result of the steps that were immediately taken to simplify the machine model No. 91 was produced, and plaintiff marketed it in the first part of 1931. The principal difficulty which the patentee encountered in developing the machine seemed to be with the knives, which had to be designed so that they would stand up and would have the proper shearing action, and the patentee overcame it by employing V-shaped knives and having one knife smaller than the other with respect to the angle between their cutting edges.

There was no change in the fundamental principles of operation which were essential to the successful operation of a combined sewing and pinking machine in model No. 91 over model No. 90, but No. 91 proved satisfactory and is plaintiff's commercial machine.

Patent No. 1,891,308 was applied for August 6, 1930, and issued December 20, 1932, and patent No. 1,909,346 was applied for March 13, 1931. The two applications were therefore copending.

The machine of the plaintiff has met with commercial success; approximately 465 of the model No. 91 having been sold up to October 1, 1933. The machine sells for $150, and the plaintiff has advertised it continuously since about June, 1931.

There are sixteen claims of patent No. 1,891,308 in suit; and one claim of patent No. 1,909,346 in suit. The claims may be grouped with reference to four general features of construction as follows:

(1) V-shaped knives with differential angles, claims 1, 3, and 8.

(2) V-shaped knives with yieldable frictional engagement, claims 2, 3, 9, 16, 17, 18, 19, 20, 22 and 24.

(3) Guiding means to maintain the knives in constant engagement, claims 6, 8, 9, 21, 22, 23, and 24.

(4) Means for obtaining the desired timed relation between the operation of the knives and the needle, claim 27 of patent No. 1,891,308, and claim 12 of patent No. 1,909,-346.

Claim 1 is representative of the first group, and reads as follows: "1. A combined seaming and pinking machine including a vertically reciprocable needle, and pinking mechanism disposed at one side of the needle and including a horizontally disposed ledger blade having an opening forming converging cutting edges, and a blade movable upwardly and downwardly with respect to the ledger blade and having converging cutting walls cooperating with the cutting edges of the ledger blade, the angle of the cutting edges of the ledger blade being more than the angle of the cutting walls of the movable blade."

Claim 2 is representative of the second group, and reads as follows: "2. A combined seaming and pinking machine including a vertically reciprocable needle, and a pinking mechanism disposed at one side of the needle and including a horizontally disposed ledger blade having an opening forming converging cutting edges, and a blade movable upwardly and downwardly with respect to the ledger blade and having converging cutting walls cooperating with the cutting edges of the ledger blade, and means for main-

taining the cutting edges of the ledger blade and the cutting walls of the movable blade in yieldable engagement with each other during cutting movements of the movable blade."

Claim 6 is representative of the third group, and reads as follows: "6. A combined seaming and pinking machine including a vertically reciprocable needle, and a pinking mechanism disposed at one side of the needle and including a horizontally disposed ledger blade having an opening forming converging cutting edges, and a blade movable upwardly and downwardly with respect to the ledger blade and having converging cutting walls cooperating with the cutting edges of the ledger blade, said walls forming a resultant toe portion and spaced heel portions, the latter being provided with depending extensions disposed in constant engagement with the divergent end portions of the cutting edges of the ledger blade."

Claim 27 constitutes the fourth group, and reads as follows: "27. In a combined seaming and trimming machine, the combination of a stitch forming mechanism including a vertically reciprocable needle, and a trimming mechanism including a ledger blade and a blade movable upwardly and downwardly with respect to the ledger blade and cooperating therewith, driving means for the needle, and means for imparting positive reciprocations to the movable blade in timed relation with but less in number than the needle reciprocations and including speed reduction gear connections with the needle driving means and an element eccentrically rotated by the gear connections and having driving connection with the movable blade."

Claim 12 of patent No. 1,909,346 reads as follows: "12. In a combined seaming and pinking machine, the combination with a stitch forming mechanism including a rotary shaft and a vertically reciprocatory needle; of a trimming mechanism including a vertically reciprocatory trimming blade located at one side of the needle and having converging cutting edges, and a ledger blade cooperating therewith; and means operated by the shaft and including a reduction gear coupling for reciprocating the trimming blade concomitantly with certain of the needle reciprocations."

Fourteen patents were set up in the answer to the suit on patent No. 1,891,308, and they, with one patent referred to in one of them, making fifteen in all, were offered in evidence. Only six of those patents were set up in the answer to the suit on patent No. 1,909,346, but I will consider all of them without regard to the suit to which they apply.

Defendant called no expert to explain the prior art patents on his behalf.

Patent No. 242,791, to Riess, for cutting or trimming attachment for sewing machines, issued June 14, 1881, discloses a combined stitching and trimming machine having a flat cutting blade A, with a rounded cutting edge terminating in a rather sharp point. The knife at its lower end is inclined backward to give a shearing action in cutting. It is attached to the stationary head of the sewing machine and does not reciprocate. It extends between the feed dogs C and D, which are intended to feed the material against the stationary blade A, but out of contact with the feed dogs. There is no shearing action in the sense that a movable blade coacts with a stationary blade, with a yieldable engagement between them. The patent was not cited by the Patent Office, and I fail to see how the patentee of the patent in suit was taught anything by this patent.

Patent No. 255,578, to Borton and Willcox, assignors to Willcox & Gibbs Sewing Machine Company, for trimmer for sewing machines, issued March 28, 1882, discloses a combined trimmer and sewing machine, with a movable flat cutter blade E, which coacts with the stationary blade D and trims the straight edge parallel to the seam.

The cutting blades are intended to coact like a pair of shears. The oscillating blade E is mounted on a rock shaft which is urged longitudinally by coil spring H so as to produce a yielding functional engagement between the two cutting blades. This patent was not set up in the answer, but is referred to in the Beardslee patent, nor was it cited by the Patent Office, and, notwithstanding defendant's contention as to the provision for a clearance between the edges of the cutting blades and the application of spring pressure at the tip of the turnable cutter, it does not teach anything respecting the resilient mounting of the two V-shaped blades which make two converging cuts with a single stroke.

Patent No. 323,439, to Ober, for trimmer for sewing machines, issued August 4, 1885, discloses a single knife straight edge trimmer, the arm carrying the cutter being fastened to the needle bar to move it in conjunction therewith.

The particular feature to which the patent relates is the use of a grinding stone for

the lower knife so as to keep the upper knife sharp. The guide extension H on the upper knife is guided in an opening in the throat plate so as to maintain the proper co-active relation between the knife H and its coacting member D. The general teaching of this patent did not assist the patentee in solving the problem of guiding his knives. This patent was not cited by the Patent Office.

Patent No. 431,136, to Beardslee, Kaiser, and Russell, assignors to the Manufacturer's Special Machine Company, for a trimming attachment for sewing machines, issued July 1, 1890, discloses a trimming attachment for a sewing machine with a straight-edged knife reciprocated with the needle. The patentee refers to the use of a spring in prior devices to maintain the cutting elements in coactive relation, and purports to show a way to avoid the use of a spring; reliance being had upon the particular slope of the coacting edges and the inclination of the blades as shown in Figs. 10, 11 and 12 of the patent. This patent taught nothing which aided the patentee in solving the problem with which he was confronted. This patent was not cited by the Patent Office.

Patent No. 529,783, to Cummins and Munro, for trimming attachment for sewing machines, issued November 27, 1894, discloses the use of V-shaped blades. The upper knife is carried by the rock lever G, which is actuated by a lever D connected to the needle bar; the movable knife being actuated every time that the needle is actuated. The cutting edge of the cutting knife is shown as tapered upwardly from the apex, and not downwardly as are plaintiff's knives; therefore the cutting would have to be backwardly from the point. The angle of the male and female knives is the same; there is no resilient, yieldable relation between the knives, and the movable knife is connected to be operated with every reciprocation of the needle.

The construction disclosed in that patent would seem to be inoperative, due to the fact that the movable knife, being connected to be operated with every reciprocation of the needle, the pinks would be so close together that the edge would be practically straight. But, assuming the patent to be operative, it does not anticipate. This patent was cited by the Patent Office.

Patent No. 570,805, to Jacobus, for trimming attachment for sewing machines, issued November 3, 1896, disclosed V-shaped knives, and is not designed to operate with the stitch-ing, but to take the place of the stitching. The operating lever 5 is connected to the needle bar only when the needle is removed. As the bottom of the movable knife is flat, the device is of the nature of a punch rather than a shearing device. This patent clearly did not anticipate either of the patents in suit. This patent was cited by the Patent Office.

Patent No. 996,383, to Weis, for trimming mechanism for sewing machines, issued June 27, 1911. This machine trims ahead of the stitching. The spring 22 resiliently urges the movable blade against the stationary blade, and the movable knife 20 is rocked by shaft 18 in co-operative engagement with the stationary blade 28. The depending guide finger 25 on the movable blade is an additional feature of the patent. This patent does not anticipate. This patent was cited by the Patent Office.

Patent No. 1,020,089, to Gray, assignor by mesne assignments to the Singer Manufacturing Company, for zigzag stitch sewing machine, issued March 12, 1912, discloses a special type of sewing machine to make zigzag or overseaming stitches, and seems to have no bearing upon the issues, and was not cited by the Patent Office.

Patent No. 1,177,138, to Ringe, assignor to the Singer Manufacturing Company, for seam trimmer for sewing machines, issued March 28, 1916, discloses a trimmer combined with a sewing machine, with a needle bar having a vibrating connection 35 to impart to it a zigzag movement, so as to make the form of stitch illustrated in Fig. 10. The knife in the shape shown in Fig. 9 is operated from underneath so as to cut the edge of only the bottom one of the two layers as shown in Fig. 10. The movable knife 51 coacts with a ledger blade 79 of the cutting edge 82, which is constructed to yield slightly to the action of the trimmer blade. I see nothing in the teachings of this patent which affords help in the solution of the problem of making a V-shaped cut. This patent was not cited by the Patent Office.

Patent No. 1,256,731, to Rogers, assignor to William Raubitschek for selvage severing mechanism, issued February 19, 1918, shows a combined seaming and selvage severing mechanism. The severing mechanism includes a scallop-shaped cutting die 39 and a co-operating matrix 40. The action of the die is that of a punching device, the movement of the die being straight up and down, and there is no yieldable relation between the die and the matrix.

The die is cam controlled and lowered periodically in timed relation with the number of stitches, but does not descend with every reciprocation of the needle. The matrix is shaped to form scallops, and these scallops follow the line of the stitching; the cutting edge produced by the matrix registering with the outer turns of the over edge stitches. The severing device 39 is located directly in the rear and in spaced relation to the presser foot.

There is nothing in the Rogers patent to hold the fabric taut after leaving the presser foot. The tendency after the fabric leaves the presser foot is to drag and pile up. The shifting of the work either to the right or the left relative to the severing device, or the dragging of the fabric between the foot and the severing device in the Rogers machine, will cause the fabric not to register with the stitched scallops.

It does not seem to me that this patent functions in the same way and for the same purpose as the patents in suit. This patent was cited by the Patent Office.

Patent No. 1,409,121, to Schiller, for cutting attachment for sewing machines, issued March 7, 1922, discloses a pinking roller associated with a sewing machine head. The pinking roller 14 rolls against the surface of a wheel 18 underneath the table. A gear wheel 20 is loosely mounted on the looper actuating shaft 17 under the table, and is intermittently actuated by a rock shaft 26, which operates through links 25 and 27 to oscillate a ring 23 carrying a pawl 24, which actuates a ratchet 21 on the gear wheel 20, and in this way intermittent movement is imparted to the gear wheel 12. The punching wheel 14 is mounted above the table on the shaft 11. The driving means for the rock shaft 26 are not explained, but the punching wheel 14 would have to serve as the feeding means for the cloth. The pinking would be done while the needle ascends, and not concomitantly with the stitching, as is called for in many of the claims of the patent in suit. This patent seems to me to be impractical, and there is no evidence that it has any commercial success. It is true that it was an attempt to combine an automatic pinking operation with a stitching machine, but it contributed little if anything of value to the art, and certainly did not teach anything to the patentee of the patent in suit. This patent was not cited by the Patent Office.

Patent No. 1,433,705, to De Voe, assignor to the Singer Manufacturing Company, for trimming mechanism for sewing machines, issued October 31, 1922, discloses a combined trimmer and sewing machine, the particular patented feature of which is the way in which the resilient coaction between the cutting blades is obtained. The moving knife 20 has a one to one ratio with the needle, and it is provided with a depending advance piercing point 19. The patentee of the patent in suit gained nothing by its teaching. This patent was cited by the Patent Office.

Patent No. 1,489,891, to Levine, for pinking machine, issued April 8, 1924, discloses a device of the same type as that disclosed in the Schiller patent, with a pinker of the roller type, actuated by a pawl 35, engaging with a ratchet 29 upon a wheel, and operated by a pivoted lever 32. As in the Schiller patent, the pinking roller operates when the needle ascends, and constitutes the feeding means for the material. This patent seems to me to be inoperative, as the roller can only cut as fast as the stitches are made, but each actuation of the ratchet 29 must roll the wheel a peripheral distance greater than the distance between the stitches. I see nothing in the teachings of this patent which aided in the solution of the problem confronting the patentee in the patent in suit. This patent was cited by the Patent Office.

Patent No. 1,523,931, to Cooke, assignor to Nicholas W. Mathey, for stitching and perforating machine, issued January 20, 1925, discloses an attachment to a sewing machine for punching leather, according to designs, in which the punch 51 is raised and lowered in timed relation to the needle, through a bell crank operated by a groove cam 14. There is no trimming of the material, and it does not seem to me to be a pertinent reference. This patent was not cited by the Patent Office.

Patent No. 1,526,736, to Blake and Ringe, assignors to the Singer Manufacturing Company, for sewing machine, issued February 17, 1925, discloses a combined seaming and slitting machine, designed for the shoe industry. The knife 45, which has a depending guide finger, is mounted on a rock arm operated from mechanism driven at reduced speed from the main shaft 5 and located underneath the bed of the machine, and cuts a series of slits in planes at right angles to the line of the seam. A flat spring 75 urges a member 74 resiliently against the knife so as to afford the shearing action between the two members. Aside from the fact that this

patent is another example of a combined cutting and stitching mechanism, it is of no interest as it could not be adapted for the use designed for the patent in suit without complete reorganization of the machine. No claim in suit would read upon it, and it does not anticipate. This patent was cited by the Patent Office.

An examination of the patents of the prior art discloses that there was nothing broadly new in guiding a movable knife with relation to a coacting stationary blade, in the use of a spring to maintain the cutting elements in coactive relation, and in combining stitching and cutting, or stitching and trimming, in the same machine, but the combinations of the patents in suit are new and produce new results, and there had not been combined a stitching and pinking machine in the art before the Gruman patents in suit which had attained any success. In all the art cited but two patents were pointed out which showed any combination of stitching and pinking, and those two patents (Schiller, No. 1,409,121, and Levine, No. 1,489,891) both disclosed a pinking roller which, as I have pointed out, supra, function differently to produce in a different way pinking in combination with stitching, and I have grave doubt that either of those two patents is practical, even if operative. The Levine patent was cited as a reference by the Patent Office, and in spite of that fact the patent was allowed.

No one of the claims of the patents in suit was ever rejected by the Patent Office; on the contrary, every one of them was allowed as presented.

The art presented on this trial adds nothing of value to that considered and passed on by the Patent Office during the prosecution of the patents in suit; and that fact strengthens the prima facie presumption of validity. Fairbanks, Morse & Co. v. Stickney (C. C. A.) 123 F. 79, 82; J. A. Mohr & Son v. Alliance Securities Co. (C. C. A.) 14 F.(2d) 799, 800.

■ The burden of proof is on the defendant to overcome the presumption of validity. Cantrell v. Wallick, 117 U. S. 689, 695, 6 S. Ct. 970, 29 L. Ed. 1017.

■ Commercial success in and of itself is not evidence of invention, but, taken in conjunction with all of the other evidence in this case, if there is any doubt as to the validity of the patents in suit, which I do not find, it seems to me that the commercial success of the plaintiff in marketing the machines of the patents in suit should result in resolving that doubt in favor of the plaintiff. Vacuum Cleaner Co. v. American Rotary Valve Co. (D. C.) 227 F. 998, 1002; Keystone Manufacturing Co. v. Adams, 151 U. S. 139, 145, 14 S. Ct. 295, 38 L. Ed. 103; Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527.

As to the defense of double patenting, interposed by the answer in the second suit, there does not seem to me to be much merit.

Claim 12 of patent No. 1,909,346 and claim 27 of patent No. 1,891,308 both relate to the feature of timing the pinking operation with respect to the stitching, so that the pinking occurs less frequently than the stitching, but concomitantly therewith. There are, however, two principal distinctions disclosed by a comparison of those claims. Claim 12 is, but claim 27 is not, limited to a trimming blade having converging cutting edges. Claim 27 does, but claim 12 does not, include in the speed-reducing train an element eccentrically rotated by the speed reduction gear connections.

■ The applications for the two patents in suit were copending. The first patent in suit is not prior art to the second; to obviate double patenting, it is only necessary that the claims be not the same, and it is not even necessary that the claims of the second patent embody a patentable advance over the first patent. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co. (C. C. A.) 22 F.(2d) 259.

■■ The defense of invalidity of the first patent in suit and double patenting in the second patent in suit are inconsistent defenses. H. C. White Co. v. Morton E. Converse & Son Co. (C. C. A.) 20 F.(2d) 311.

Unless claim 27 of the first patent in suit is valid, the defense of double patenting as to claim 12 of the second patent in suit is not available. American Hatters & Furriers Co. v. Danbury & Bethel Fur Co. (D. C.) 47 F.(2d) 268, 269.

The patents in suit are valid.

We now come to the question of infringement.

Plaintiff offered in evidence three exhibits, Nos. 9, 10, and 11, representing three types of machines manufactured and sold by the defendant, but there is no evidence of the quantity sold.

As to the defendant's first machine, Exhibit 9, the evidence shows that this machine was not manufactured and sold subsequent to the issuance of either of the patents in suit.

As to the defendant's second machine,

Exhibit 11, it is contended that the same is no longer manufactured or sold, but the evidence shows that machines of that type were manufactured and sold in this district subsequent to the date of issuance of both of the patents in suit, and therefore is an issue in this case.

The defendant's third machine, Exhibit 10, is defendant's commercial machine, and is being and has been manufactured and sold in this district subsequent to the date of the issuance of both patents in suit, and prior to the commencement of this action.

Defendant's first type of machine, Exhibit 9, Popper patent, No. 1,886,422, as such, is not in the issue of infringement, but may be considered in connection with the evolution of defendant's machine. Both the patent and machine disclose a cam roller 54, driven by a speed-reducing train of gears, and coacts with roller 34 on a pivoted lever 13, which is urged upwardly by a spring 32, and a free end carries the movable knife 22 in co-operative relation with the lower knife or ledger blade 45. The roller 34 is mounted upon a pivoted lever to be swung into and out of coacting relation with its actuating cam roller 54. The knives are V-shaped, and the holder for the upper knife is pivotally mounted on the front end of the lever 13, and is urged forwardly by a flat spring 28, which bears against its rear side. The angle of the cutting wall of the upper knife is slightly less than that of the lower knife, and the upper knife has heel extensions, No. 24 in the Popper patent, which are in constant engagement with the walls of the lower cutting blade and prevent the upper knife from escaping from relationship to its uppermost position.

The defendant's second machine, Exhibit 11, was made according to Popper patent, No. 1,878,293, with the exception of the throwout or disabling feature shown in that patent, subsequent to the issuance of the patents and prior to the commencement of each suit, but some were made and sold by Popper Machine Company with the throwout feature before the first patent in suit was issued.

The cutting elements are exactly like that of the first machine, but it differs in the actuating mechanism for the pivoted lever 13, which instead of being cam operated, in which the return movement is effected by a spring, is actuated positively in both directions by a crank on the end of a link 63, the upper end of which is pivoted eccentrically to a worm gear engaging with and driven by a worm on the main shaft of the sewing machine head.

Defendant's third machine, Exhibit 10, is made according to the Popper patent, No. 1,922,453. The knives are specifically those shown in Figs. 5 and 6 of that patent, and defendant's third machine differs from defendant's second machine only in the construction of the knives.

The inclination of the upper knife of the third machine differs from that of the second.

The third machine differs from the earlier machines also in that, measured in a plane at right angles to the apex of the upper knife, the walls make an angle as great as, or even slightly larger than, the angle of the opening in the ledger blade, and the guide extension designed to keep the knives in engaging relation is transferred from the lower knife to the upper knife.

Mr. Popper testified that he had not seen the plaintiff's machine when he brought out his first machine, and there was no positive evidence that contradicted this, but the very great similarity of the two machines, the fact that plaintiff's machine had been on the market a year, and Mr. Popper's testimony that he had seen the plaintiff's machine "say the early part of 1932," and had applied for his patent No. 1,886,422 on February 19, 1932, leads me to the belief that Mr. Popper may have made an error and in fact have seen the plaintiff's first machine. If that be not so, then for two people disassociated from each other to have arrived so closely to each other in their disclosures seems to be most unusual and much more than merely remarkable.

Mr. Popper did not in subsequent modifications of his first machine depart from the principles nor in essential features of construction from his first machine.

In the defendant's second machine, the upper knife is presented to the lower knife at an angle which at the conclusion of the cutting action is 5° 20′ from the vertical when the ledger blade is horizontal. The walls of the ledger blade make an angle of 59° with each other, and the angle which the walls of the upper knife make with each other in the plane at right angles to the edge is 57° 15′. The angle of the walls which they make with each other in the plane of the ledger blade is 57° 2′. The clearance for the upper knife is 59′ on each side. The knives of the patents in suit show an inclusive angle of the plaintiff's ledger blade of 57°, and

the clearance for the upper knife on each side is 30′.

We now come to a consideration of the defendant's third machine, Exhibit 10, in which, as stated, supra, the sole difference resides in the construction of the knives.

The evidence shows that in the plane of the ledger blade, the angle of the movable knife is not, and cannot be, larger than the angular openings of the ledger blade, and in operation there must be and is a clearance for the movable knife within the co-operative cutting edges.

On all the evidence, I can see no difference in the action of the cutting knives in the defendant's third machine, Exhibit 10, and the knives of the patents in suit.

At the beginning of the operation, the two cutting edges of the movable blade cross the cutting edges of the ledger blade and converge to a point which projects in advance of the apex of the ledger blade and the crossing points, which are the cutting points, progress forwardly as the knife descends, until they come together when the two apices coincide. The only difference I can find is that in the defendant's structure the upper knife is the one that yields against the spring tension, while in the patents in suit it is the lower knife that yields.

In the defendant's second type, Exhibit 11, the location of the guide extensions was on the upper knife, whereas in the defendant's third type, Exhibit 10, the guide extension is on the lower knives, but there is no difference in the function performed, as it is the same in either location, namely, to hold the upper knife at all times in engagement with the lower knife.

Patentability, as we have seen from the prior art, did not depend upon having the guide on the movable knife, but the invention involved was independent of the exact location of the guides.

Claim 6 of the first patent in suit calls for "said walls forming a resultant toe portion and spaced heel portions, the latter being provided with depending extensions disposed in constant engagement with the divergent end portions of the cutting edges of the ledger blade."

Literally, it seems to me that defendant's third knife, Exhibit 10, has the depending extensions called for in claim 6 in the heel extensions, which in the usual operation of the machine upon the material used in ladies' dresses and underwear would set farther down than they would in operating on extremely thick material, and there would be no occasion for their rising above the plane of the top surface of the ledger blade. Of course, if very thick material was used, the upward extensions of the ledger blade would come into play, but they perform no function· before that time, as the moving knife does not touch them, and they therefore have no guiding or retaining function.

The knife can do no cutting back of the front edges of the upward extensions on the ledger blade of the defendant's third type, Exhibit 10, and therefore only that portion of the edges of the upper blade ahead of those extensions constitutes cutting edges. Except to hold the upper blade in the opening of the lower blade, against the tension of the flat spring, so long as those corners are below the top surface of the ledger blade, those corners serve no function as the two ends of the movable blade are beveled at a considerable angle clear back to the rear face of the blade. Under any conditions there is no change in function but a mere reversal of parts operating in the same way to effect the same result. This does not avoid infringement. Piano Motors Corporation v. Motor Player Corporation (C. C. A.) 282 F. 435; Devlin v. Paynter (C. C. A.) 64 F. 398; Allen v. Wingerter (C. C. A.) 17 F. (2d) 745; Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co. (C. C. A.) 25 F.(2d) 236; Société Anonyme Usine J. Cléret v. Rehfuss (C. C.) 75 F. 657, 660.

The purpose of the court must be to find the real invention and see if it has been appropriated. Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; Crown Cork & Seal Co. v. Aluminum Stopper Co. (C. C. A.) 108 F. 845, 846; Winans v. Denmead, 15 How. 330, 14 L. Ed. 717.

The patents in suit are meritorious and are entitled to a range of equivalents sufficient to protect the invention of those patents. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 414, 28 S. Ct. 748, 52 L. Ed. 1122; Allen v. Wingerter (C. C. A.) 17 F.(2d) 745.

In claim 1 of the first patent in suit is found the requirement "the angle of the cutting edges of the ledger blade being more than the angle of the cutting walls of the movable blade."

This refers to the cutting angles of the walls of the movable blade and not to the angle of the movable blade as a whole.

The cutting edges of the defendant's ledger blade is 60°, and that is fixed.

The inclination to the plane of the ledger blade of the cutting walls of the movable knife of the defendant's structure is 1° 10' smaller than the cutting walls of the ledger blade, or a clearance of 35' on each side for the movable knife, while in the knives of the patents in suit there is a clearance of 30' on each side.

This is clearly shown by Exhibit 25.

The knives of the defendant's third type, Exhibit 10, have the differential angles required in claims 1, 3, and 8 of patent No. 1,891,308 of the first patent in suit.

Even if Popper made improvements in the knives as he contends, so as to give the upper knife a greater inclination, and thereby effect what he called a sliding cut, and took the guide extensions off the upper knife and put them on the lower knife, because as he said an inexperienced mechanic might set the upper knife so low that the extensions would strike the loop taker of the sewing machine, that would not give him any right to retain the fundamental principles and advantages of the patented construction. Temco Co. v. Apco Co., 275 U. S. 319, 328, 48 S. Ct. 170, 72 L. Ed. 298.

The defendant's second and third machines infringe the claims of the patents in suit.

A decree may be entered in favor of the plaintiff against the defendant Max Popper in accordance with this opinion for injunction and accounting, with costs, and the usual reference, and in favor of the defendant Anton Popper dismissing the bill of complaint as to him, without costs. Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court, as provided by rule 70½ of the Equity Rules (28 USCA § 723), and rule 11 of the Equity Rules of this court.