[black bar]

"LEWIS INVISIBLE STITCH MACH. CO. v. POPPER et al.
No. 174.
Circuit Court of Appeals, Second Circuit.
March 10, 1941."

[black bars]

"See, also, D.C., 35 F.Supp. 664.
George T. Gill, of New York City, for appellant.
Markewich & Null, of New York City (Samuel Null and Jerome G. Rosenhaus, both of New York City, of counsel), for appellee.
Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.
Several years ago..."

## LEWIS INVISIBLE STITCH MACH. CO. v. POPPER et al.
### No. 174.

Circuit Court of Appeals, Second Circuit.

March 10, 1941.

See, also, D.C., 35 F.Supp. 664.

George T. Gill, of New York City, for appellant.

Markewich & Null, of New York City (Samuel Null and Jerome G. Rosenhaus, both of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

Several years ago the appellant obtained in the above entitled suit an injunction restraining the appellee from manufacturing, using or selling combined sewing and pinking machines embodying the invention covered by certain claims of two patents to Gruman, Nos. 1,891,308 and 1,909,346, which the district court held valid and infringed in 5 F.Supp. 859. Thereafter in 1935 the parties made a settlement by the terms of which the appellee was granted a license to make and sell such machines within a specified limited territory. The present controversy arises out of the appellant's charge that the appellee has violated the injunction by the sale of machines outside the licensed territory. Upon supporting and opposing affidavits the appellant's petition for the issuance of an attachment for civil contempt came before

the same judge who had tried the original infringement suit and resulted in a denial of the petition.

 The first reason given for such denial is that the clause of the license agreement authorizing a revocation of the license after notice in the event of a violation of any of its terms, precluded proceedings for contempt so long as the license remained unrevoked. We cannot agree with this interpretation of the licensor's rights. The agreement purports to do no more than grant a license to make and sell on specified conditions machines which would otherwise infringe the Gruman patents. Acts forbidden by the injunction are excused only if authorized by the license; there is no ground for reading into the agreement a complete renunciation of the protection the injunction afforded. Therefore, as this court held in Radio Corporation of America v. Cable Radio Tube Corp., 2 Cir., 66 F.2d 778, 782, proceedings for contempt will lie for infringing acts outside the scope of a license granted after an injunction against infringement has issued. And sales in unauthorized territory are plainly outside the scope of the license. American Pastry Products Corp. v. United Products Corp., D.C.Mass., 39 F.2d 181. It is true that the license agreement in that case, unlike the agreement in the case at bar, provided that the licensor might, "without precluding its right to damages, accounting, and injunction" terminate the license by written notice, but Judge Morton's opinion rightly put nothing upon that fact. It is not a valid ground of distinction between that case and this.

The second reason advanced for denial of the appellant's petition is laches based on a finding that the petitioner knew of the defendant's alleged violations for some three years and seven months before moving to punish him for contempt. The affidavits as to conversations are conflicting. Popper's letter of October 15, 1936, to the petitioner's counsel protests that "you cannot confine me to a limited territory while your client is covering the whole market with my patent," but this is scarcely a declaration that the defendant intends to extend his sales beyond the licensed territory, and even less a statement that he has already done so. While the petitioner admits knowledge of rumors of unauthorized sales it asserts that it was without reliable proof until it obtained possession of the two machines upon which its petition was based. Nor is it clear that the petitioner's delay was prejudicial to the defendant. On evidence so unsatisfactory we should hesitate to sustain the order on the ground of laches, but we need not decide the point because affirmance of the order can be rested on the third reason given in the opinion below.

██ Judge Campbell stated that neither of the machines introduced upon the contempt motion was before him on the original trial and that he was not convinced that they were merely equivalents or colorable imitations of the patented machines. That issue he thought should be tried out on a supplemental bill for infringement rather than on a motion to punish for contempt. It is well established that determination of which of the two remedies is the more appropriate is a matter lying within the discretion of the trial judge. Gordon v. Turco-Halvah Co., 2 Cir., 247 F. 487, 490; National Metal Molding Co. v. Tubular Woven Fabric Co., 1 Cir., 239 F. 907, 908; Hartford-Empire Co. v. Obear Nester Glass Co., 8 Cir., 95 F.2d 414, 417. As to the Top-Stitch machine, with which the petition and moving affidavits were primarily concerned, we have no doubt that the court's discretion was wisely exercised. The other machine, "Model 900", appears to us to be very close to the machine of the trial exhibit, but Judge Campbell entertained a real doubt and preferred to relegate the petitioner to a supplemental bill as to this model as well as the Top-Stitch. The ruling was within his discretion.

Order affirmed.