**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ICAP, INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.

GLOBAL DIGITAL SATELLITE SYSTEMS,
INCORPORATED, a British Virgin
Island Corporation,
<u>Defendant-Appellee.</u>

No. 99-2087

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Theresa Carroll Buchanan, Magistrate Judge.
(CA-98-1209-A)

Argued: June 6, 2000

Decided: July 31, 2000

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Edward Geltner, GELTNER & ASSOCIATES,
P.C., Washington, D.C., for Appellant. Earl John Oberbauer, Jr.,
Manassas, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant ICap, Inc., brought this action against Global Digital Satellite Systems, Inc., alleging that Global breached an oral contract to pay ICap a finder's fee of $1,000,000. The parties agreed to a bench trial before a magistrate judge, <u>see</u> 28 U.S.C.A. § 636(c)(1) (West 1993), who ruled against ICap on its claims.[1] ICap appeals, and we affirm.

I.

Global, which manufactures and installs satellite-based telecommunications systems, was searching for a joint-venture partner to facilitate the installation of a telephone system in Egypt. Global retained the services of ICap, an investment banking firm that provides financing for national and international public infrastructure projects, to locate a qualified partner. The parties initially anticipated that, in addition to locating a partner, ICap would serve as the project manager for the joint venture. All involved agreed that ICap would be compensated for its services, although the amount and terms of the compensation were not agreed to in advance.

ICap arranged for meetings between Global and Ashraf Nour, who had located a qualified principal in Egypt. It later became apparent that Nour would manage the project, and ICap's role was reduced to that of a finder only.

In February 1998, shortly before the formalization of the agreement between Global and Nour, ICap made a concerted effort to finalize its agreement with Global. On February 14, ICap's principals placed a

_____

[1] The magistrate judge also rejected ICap's quantum meruit claim, and ICap does not pursue that claim on appeal.

2

telephone call to Nagaraj Murthy, the person designated by Global to negotiate the terms of the agreement with ICap. According to ICap, Murthy agreed during that telephone call that ICap would be paid $1,000,000 as a finder's fee. After Murthy agreed to that figure, and while the telephone call continued, ICap faxed Global a proposed agency agreement that included the $1,000,000 finder's fee.

All three of ICap's principals who participated in the February 14 telephone conversation testified at trial that Murthy specifically agreed to a $1,000,000 fee during the call. Murthy, however, testified that he did not agree to that fee and that he told ICap the proposed agreement was too complicated and would need to be approved by Laurence Goshorn, Global's president.

Because Global did not execute the February agreement, ICap faxed another agreement to Goshorn on March 10, 1998. The letter accompanying the March agreement stated that "in order to document our agreement, we enclose a revised draft, which is based on documents discussed and negotiated with representatives of [Global] since November. We believe it also to be responsive to all issues raised by [Murthy]." J.A. 122. Although the March agreement reflected the $1,000,000 finder's fee, it contained different terms for the payment of the fee. Mark Latimer, one of ICap's principals, explained at trial that he meant to fax the February agreement to Global, but that he inadvertently sent a prior draft of the agreement. According to Latimer, he believed that ICap and Global had reached an agreement in February, and the March fax was not intended to be further negotiation of their compensation.

When Goshorn received the March agreement, he faxed a response stating that he was "shocked at the points on your cover letter" and that the $1,000,000 finder's fee "leaves me baffled!" J.A. 125. Communications between ICap and Global broke down thereafter.

Global entered into an agreement with the Egyptian principal located by Nour to install Global's telecommunications system in Egypt. As of the time of the hearing, however, the Egyptian government had refused to issue the necessary permits, and, consequently, the joint venture had earned no money.

3

By July 1998, ICap had decided that it would be necessary to file suit against Global to collect its fee. ICap called Global to inform it that a lawsuit was forthcoming. A Global representative suggested that the parties make a "last ditch effort" at settling the claim. J.A. 61. After more discussions, Global faxed ICap a letter offering to pay ICap $50,000. ICap rejected that offer as "insulting low," J.A. 127, and made a counteroffer of $794,000. Global refused ICap's counteroffer, and this action followed.

After a bench trial, the magistrate judge concluded that no contract had been reached between the parties on February 14:

> [T]he statements and outward expressions of the parties after February 14, 1998, constitute on-going negotiation of [ICap's] fee. These on-going negotiations, which continued until the end of July 1998, establish that the parties never had a meeting of the minds as to the amount and terms of [ICap's] compensation . . . . [B]ecause payment was contingent upon the signing of the joint venture agreement and the success of the project, the Court finds that the terms of payment are a material element of the contract. Consequently, the Court finds that there was not a meeting of the minds on all material elements of the contract and there is no express oral contract that is binding on the parties.

J.A. 139-40. The court thus ruled against ICap on its breach of contract claim.

II.

ICap first argues that the magistrate judge considered settlement negotiations between the parties when concluding that no agreement had been reached, thus violating Rule 408 of the Federal Rules of Evidence. ICap contends that all of the communications with Global after February 14 were attempts to settle its claim with Global. According to ICap, the magistrate judge specifically did not make the pivotal credibility determination--whether ICap's or Global's witnesses were telling the truth about the substance of the February 14 telephone conversation--and instead resolved the case solely through an impermissible consideration of settlement evidence. We disagree.

4

Rule 408 provides that:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

We will assume for the purposes of this opinion that ICap did not waive its Rule 408 claim by introducing the disputed evidence without mentioning Rule 408 or otherwise bringing to the court's attention that the evidence should not be considered when determining the validity of ICap's claims or its amount.[2] With this assumption, then, the question that must be resolved is whether the evidence of the communications between the parties after February 14 in fact falls within the scope of Rule 408.

To determine whether statements come within Rule 408, the inquiry is whether the "statements or conduct were intended to be part of the negotiations for compromise." Fiberglass Insulators, Inc. v. DuPuy, 856 F.2d 652, 654 (4th Cir. 1988). The determination that a statement does or does not fall within the rule is a factual determination that must be accepted on appeal unless clearly erroneous. See id.

_____

**2** ICap did file a post-trial motion in which it argued that it reached an oral agreement with Global on February 14 and that the March 10 agreement was not intended as further negotiation of the terms of that oral agreement. However, even in that motion, ICap did not mention Rule 408 or otherwise argue that the communications after February were part of any effort to settle its breach of contract claim.

5

The magistrate judge did not specifically find that the post-February communications were not negotiations to settle the disputed claim, which is not surprising given that ICap raised the issue for the first time on appeal. Nonetheless, the magistrate judge concluded that, during the February 14 telephone call, the parties did not come to a meeting of the minds as to the amount of ICap's fee or the terms for payment of the fee. This conclusion is an implicit, but inescapable, rejection of ICap's argument.

Clearly, there must first have been an agreement between ICap and Global on the essential terms of how much ICap would be paid and the terms under which that payment would be made before there could be any attempt to settle a dispute over Global's failure to comply with the agreement. By concluding that the parties did not reach an agreement on those critical terms, the magistrate judge effectively determined that the post-February communications were further, but ultimately unsuccessful, contract negotiations.

Contrary to ICap's argument, the magistrate judge did make a determination about the credibility of the witnesses when resolving this issue. The appealed order states that "[b]oth parties presented witness testimony on [the issue of an oral contract]" and that "[t]he Court finds the witnesses credible." J.A. 138. As we understand the order, the magistrate judge concluded that all the witnesses involved in the February 14 telephone call believed their trial testimony to be true-- ICap's principals believed Murthy agreed to the $1,000,000 fee, and Murthy believed he did not agree to the fee. Thus, the magistrate judge concluded that the parties never reached an agreement on the essential terms of the contract.

Given the disputed evidence about the substance of the February 14 telephone conversation and the statements in the letter accompanying the March 10 agreement that characterized the agreement as a "revised" one that was "responsive" to issues raised by Global, the magistrate judge's no-meeting-of-the-minds finding is not clearly erroneous. And, from that finding, the conclusion that the post-February communications between the parties were contract negotia-

6

tions, not settlement negotiations, necessarily follows. Under these circumstances, Rule 408 is simply inapplicable to this case.**3**

III.

ICap sought to admit the testimony of an expert who would testify that Scott, one of ICap's principals, had taken and passed a polygraph examination that asked whether Murthy had agreed to the $1,000,000 fee during the February 14 telephone conversation. The magistrate judge refused to consider the evidence, concluding that the use of polygraph evidence to bolster or impeach the testimony of a witness is not allowed in this circuit.

According to ICap, the Supreme Court's opinion in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), calls into question our prior cases establishing a <u>per se</u> rule against the use of polygraph evidence to impeach or bolster the credibility of witness. <u>See, e.g.</u>, <u>United States v. A & S Council Oil Co.</u>, 947 F.2d 1128, 1134 (4th Cir. 1991) ("This court's precedents preclude direct attacks on or bolstering of the credibility of a witness through evidence that the witness has taken a polygraph test."). ICap thus contends the magistrate judge erred in concluding that polygraph evidence is <u>per se</u> inadmissible. We find no error.

In its pre-trial memorandum addressing the testimony of its polygraph expert, ICap sought to admit the evidence only if Global attempted "to impeach Mr. Scott's credibility on the issue of whether [Global] orally agreed to the $1,000,000 finder's fee." J.A. 21. At trial, after the court denied ICap's request to call the polygraph expert, counsel for ICap noted he "thought that it would be responsive to bolstering after impeachment," J.A. 94, but that he had not heard any impeachment.

_____

**3** Even if the July discussions should be considered settlement negotiations, the substance of the March agreement and accompanying letter, when considered with the testimony about the February telephone call, is more than sufficient to support the magistrate judge's conclusion that there was no meeting of the minds as to the essential terms of the agreement between ICap and Global.

7

Our review of Global's cross-examination of Scott confirms that Global did not inquire into or otherwise challenge Scott's recollection of the substance of the February 14 telephone call. Because the only factual predicate under which ICap sought to admit the expert's testimony--the impeachment of Scott's testimony--did not occur, the magistrate judge committed no error in refusing to allow the expert to testify.[4]

Moreover, in United States v. Sanchez, 118 F.2d 192 (4th Cir. 1997), we reaffirmed our per se rejection of the use of polygraph evidence to impeach the credibility of a witness and concluded that the cases establishing that rule remain binding precedent notwithstanding the change in the law arguably worked by Daubert . See id. at 197 n.3. We also note that the Supreme Court recently concluded that a per se rule excluding all polygraph evidence is constitutional. See United States v. Scheffer, 523 U.S. 303 (1998). We therefore reject ICap's challenge to the exclusion of the polygraph evidence.

IV.

Accordingly, for the foregoing reasons, the decision of the magistrate judge is hereby affirmed.

AFFIRMED
_____
[4] Given that the magistrate judge found ICap's witnesses to be credible, the evidence would have been cumulative in any event.

8