**FIBERGLASS INSULATORS, INC.;**
**Fiberglass Insulators of Savannah,**
**Inc., Plaintiffs–Appellants,**

v.

**Gerard W. DUPUY, Alpha T. Bailey,**
**Richard O. Williams, Bailey Specialties,**
**Inc., Gulf Atlantic Insulators, Inc., Du-**
**puy–Williams, Inc., Defendants–Appel-**
**lees.**

No. 87–3885.

United States Court of Appeals,
Fourth Circuit.

Argued May 2, 1988.
Decided Sept. 13, 1988.

Harry A. Swagart, III (James H. Lengel, Swagart & Lengel, Columbia, S.C., Charles

C. Murphy, Jr., Vaughan, Davis, Birch & Murphy, Atlanta, Ga., on brief), for plaintiffs-appellants.

R. Bruce Beckner (Timothy J. O'Rourke, Dow, Lohnes & Albertson, Washington, D.C., Chandler Kite Stanard, Stanard & Mark, Mobile, Ala., William H. Grimball, Sr., Grimball & Cabaniss, Charleston, S.C., on brief), for defendants-appellees.

Before RUSSELL and WIDENER, Circuit Judges, and BUTZNER, Senior Circuit Judge.

WIDENER, Circuit Judge:

In this interlocutory appeal, plaintiffs challenge the order of the district court which prevents them from offering evidence, at trial, of statements made by attorneys in the course of settling prior related litigation between the same parties.[1] We believe that Fed.R.Evid. 408, and the public policy of encouraging settlement which underlies that rule, requires exclusion of such testimony. Accordingly, we affirm the order of the district court.

The present litigation[2] is but the latest manifestation of an acrimonious dispute of long standing between two former business associates, shareholders in a closely held corporation. Howard Krauss and Gerard Dupuy have been embroiled in litigation since the dissolution of their business association. Krauss and Dupuy parted company some time in 1980, and for the last eight years have been adversaries in a variety of lawsuits.[3] The district court found that the evidence, offered in connection with the several motions made in the course of plaintiffs' attempts to introduce the testimony at issue,[4] established that "there had been some five or six cases involving these same parties, all arising out of the breakup of a business in the year 1980; and that this litigation has continued from shortly thereafter until the present". It found that, since 1980, successive lawsuits have been filed, and ultimately settled, and that the evidence before the court indicated "that there was ongoing settlement during this entire period of time". Based upon the finding that the statements at issue, if made,[5] were made by an attorney within

1. The district court ruled simultaneously on several preliminary motions made by both plaintiffs and defendants. By an order entered September 4, 1987, the district court (1) denied plaintiffs' motion to admit the testimony of Billy C. Bedsole, one of the attorneys for plaintiffs who had negotiated the prior settlement; (2) denied plaintiffs' motion to call an additional witness—G. Dan Bowling—another attorney for plaintiffs involved in the settlement negotiations; (3) granted defendants' motion to adjudicate as inadmissible all testimony of Billy C. Bedsole and G. Dan Bowling; and (4) denied plaintiffs' motion to disqualify Chandler K. Stanard, an attorney for defendants and the third and remaining party to the prior settlement negotiations and supposed maker of the statements in question.

The district court certified this order pursuant to 28 U.S.C. § 1292(b), and we granted permission to appeal on October 22, 1987.

2. Fiberglass (the Krauss interest) sued Dupuy, et al, under the Sherman Act and South Carolina Uniform Trade Practices Act, alleging that defendants, by way of various activities, including predatory pricing, sought to eliminate plaintiffs as competitors in the sale and installation of mineral wool insulation products in seven counties in South Carolina and Georgia running from Charleston, S.C. to the Georgia state line.

3. The record on appeal does not supply specifics regarding the prior litigation, but it contains ample support for the district court's finding that there were "five or six" prior lawsuits between the parties. The record supports the finding of the district court that the remarks at issue were made, if at all, in the course of discussions between attorneys for the respective parties within the context of settlement of two of the prior lawsuits.

4. In addition to the motions mentioned above, plaintiffs gave notice to take Bedsole's discovery deposition in June 1985. Defendants moved for a protective order, and the district court held a hearing and, on June 17, 1985, granted defendant's motion. Shortly thereafter, plaintiffs moved for reconsideration of the June 17th order. On September 11, 1985, the district court held a hearing on the motion for reconsideration, and denied the motion. On August 3, 1987, the court heard argument on whether Bedsole could be called as a trial witness. At this hearing, the district judge authorized taking the deposition of Bedsole, which was taken on August 21, 1987. Thereafter, the court again heard argument. The district court therefore considered the application of Rule 408 to these facts on at least four occasions.

5. Plaintiffs wished to have Billy Bedsole testify to the fact that immediately prior to the taking of the deposition of Dupuy in one of the prior lawsuits, in 1983, Chandler Stanard told him,

the context of settlement negotiations, the district judge ruled that they were inadmissible. The court relied primarily upon the strong public policy of encouraging settlements.

Federal Rule of Evidence 408 [6] is broader than the common law exclusionary rule in many jurisdictions and excludes from evidence all statements made in the course of settlement negotiations. *McCormick on Evidence*, 3rd Ed. (1984), p. 812. See also *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 251 (1st Cir.1985), in which the court excluded evidence of a settlement plaintiff had made with a joint tortfeasor. To determine whether the statements are covered by the rule, the inquiry is whether the "statements or conduct were intended to be part of the negotiations for compromise". *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir.1981). After consideration of the evidence proffered at four separate hearings, including testimony taken *ore tenus* in open court, the court determined that the evidence established that these statements, if made, were spoken during settlement discussions. These findings are not clearly erroneous. FRCP 52.

The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions. Wright & Graham, *Federal Practice and Procedure:*

Evidence, § 5302 (1980); Weinstein & Berger, *Weinstein's Evidence*, § 408[1] (1986). "By preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement". *United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir.1982) (which held inadmissible a settlement by the plaintiff with another defendant of a closely related but separate claim, much, but not the same, as here). Moreover, we agree with the statement of the Fifth Circuit, in a case under a fact situation similar to that of *Contra Costa*, that the "spectre of a subsequent use to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent". *Branch v. Fidelity & Cas. Co. of New York*, 783 F.2d 1289, 1294 (5th Cir.1986). Attorneys must be afforded wide latitude in the conduct of settlement negotiations if the rule is to have any effect.

Plaintiffs contend that even if the statements were made during the course of settlement negotiations, and even if otherwise excludable, they are admissible under the rule, for "other purposes." [7] The trial court has discretion on the issue of whether to admit such evidence for another purpose under Rule 408, and the court's decision will not be reversed in the absence of an abuse of discretion "amounting to mani-

---

Bedsole, that Dupuy had "every intention to go into full competition against [Krauss]" and that Dupuy "would cut prices and engage in any and other type activities even if it would cost him money for a short period of time in order to put [Krauss] completely out of business".

A second statement was allegedly made by Stanard in March 1981, to Bowling, again in the course of prior litigation. Appellants seek the use of Bowling's testimony to the fact that Stanard told him that Dupuy had bankrolled the new competition facing Krauss in South Carolina.

**6.** Fed.R.Evid. 408, *Compromise and Offers to Compromise,* is as follows:

Evidence of (1) furnishing or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements

made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

**7.** Plaintiffs do not seek to introduce this evidence to show the terms of the settlement agreement for purposes of establishing a breach thereof. We note that the cases that have allowed evidence of settlement negotiations have frequently done so on the basis that such use is an "other purpose" within the meaning of Rule 408. See, e.g., *Central Soya Co., Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939 (7th Cir.1982); *Catullo v. Metzner*, 834 F.2d 1075 (1st Cir.1987). That is not our case, so we do not decide whether that use of settlement evidence is proper.

fest error". *Bituminous Const., Inc. v. Rucker Enterprises, Inc.,* 816 F.2d 965, 968 (4th Cir.1987). We are of opinion the district court did not abuse its discretion in holding the statements to be inadmissible.

Plaintiffs also contend that Rule 408 serves as no bar to the admission of this testimony since the remarks are not offered to prove liability on the claims extinguished by the settlements. See *1616 Reminc Ltd. Ptshp. v. Com. Land Title Ins.,* 778 F.2d 183, 188 n. 5 (4th Cir.1985). It is true we have said, albeit in dictum, that Rule 408, "which generally forbids testimony regarding compromises or offers to compromise, need not prevent a litigant from offering such evidence when he does not seek to show the validity or invalidity of the compromised claim". *Wyatt v. Security Inn Food & Beverage, Inc.,* 819 F.2d 69, 71 (4th Cir.1987). But the fact that offering an item of evidence is not in terms barred by Rule 408 does not make it otherwise admissible. And while it is true that the instant case is founded in antitrust, and the prior lawsuits were not, the district court emphasized that in the context of this case the claims presented were but another claim "concerning really matters all arising from the same litigation", and represented the continuation of the feud between Krauss and Dupuy. The district court, in its opinion, aptly described the existing situation in the following language: "... since the very outset of this litigation in 1980, that there has been one lawsuit after another, and he [Stanard] has been attempting to settle these lawsuits one after the other; and that he has continued to work with as many as three of them going at one time."

Essentially, the trial judge determined that this case arose out of the same transaction, i.e., the breakup of the business association. The present claims are related to the dissolution of that relationship, just as much as were the claims pursued in the prior lawsuits between the same parties. As *Weinstein's Evidence,* ¶ 408[04] p. 408-27 (1986), points out, it is the general practice of the federal courts to hold inadmissible "... the attempted use of a completed compromise of a claim arising out of the *same transaction* between a third person and a party to the suit being litigated." (Italics added) Since Rule 408 would exclude such evidence, as *Weinstein, Contra Costa* and *Branch* we have referred to above point out, we think there is even more reason to exclude such evidence when the settlement or settlement negotiations are between the same parties to the suit at hand. Thus, we are of opinion the strong public policy favoring exclusion was correctly applied by the district court to exclude the statements in question under Rule 408.

In sum, we are of opinion the order of the district court appealed from is free from error. We are also of opinion that the award of sanctions with respect to taking the deposition of Bedsole was not an abuse of discretion.

The order appealed from is

AFFIRMED.