**TREBOR SPORTSWEAR CO., INC. and Rotano Sportswear Co., Inc., Plaintiffs–Appellants,**

v.

**THE LIMITED STORES, INC., Defendant–Appellee.**

**No. 1083, Docket 88–7106.**

United States Court of Appeals, Second Circuit.

Argued May 4, 1988.
Decided Jan. 12, 1989.

Harlan M. Lazarus, New York City (Lester A. Lazarus, P.C., New York City, of counsel), for plaintiffs-appellants.

Russell A. Kelm, Columbus, Ohio (John A. Gleason, Schwartz, Kelm, Warren & Rubenstein, Columbus, Ohio, of counsel), for defendant-appellee.

Before OAKES, KEARSE, and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Appellants Trebor Sportswear Co., Inc. ("Trebor") and Rotano Sportswear Co., Inc. ("Rotano") appeal from a judgment entered January 26, 1988 in the United States District Court for the Southern District of New York, Charles L. Brieant, *Chief Judge*, which granted the motion of appellee The Limited Stores, Inc. ("The Limited") for summary judgment and dismissed appellants' claims for damages for breach of contract, and which granted appellee's motion for summary judgment on its counterclaims for payment for goods delivered to appellants. The district court granted summary judgment and dismissed the amended complaint on the grounds, first, that the evidence of an agreement proffered by appellants Trebor and Rotano was insufficient to establish an enforceable contract under the statute of frauds, N.Y.U.C. C. § 2–201, and, second, that the evidence was inadmissible under Federal Rule of Evidence 408. For the reasons stated below, we affirm.

## BACKGROUND

The Limited is a distributor and vendor of women's apparel, incorporated in Delaware. Apparel that firms such as The Limited seek to dispose of in the secondary market is referred to in the industry as "sell-off" merchandise. Trebor and Rotano bought and distributed sell-off merchandise. In late 1985 or early 1986 Trebor entered into the first of several agreements to purchase women's apparel from The Limited. Prior to the delivery of most, if not all, shipments, The Limited sent Trebor an invoice expressly stating that payment was "due upon receipt." Nevertheless, Trebor generally did not pay for the goods upon receipt of the invoice, nor, in fact, did Trebor usually pay for the goods upon delivery of the merchandise itself, which typically arrived thirty days after receipt of the invoice. In some instances, payment followed receipt of the invoice by more than sixty days.

Beginning in the spring of 1987, Rotano, a New York corporation affiliated with Trebor, agreed to purchase women's apparel from Limited Express, a division of The Limited. Appellants claim that Rotano, like Trebor, customarily paid its bills at some point after receipt of its merchandise.

Appellants allege that in February 1987 The Limited offered Trebor and Rotano, and that they accepted, a "right of first refusal" with respect to approximately $10,000,000 worth of women's apparel. It appears, however, that this alleged agreement was never reduced to a contemporaneous writing.

According to The Limited, by the end of June 1987, Trebor and Rotano were delinquent on their outstanding invoices. Trebor and Rotano claim that on July 7, 1987, The Limited nevertheless issued to Trebor four additional invoices totaling $4,303,638.75, and that two days later, on July 9, The Limited issued to Rotano seven additional invoices totaling $1,931,487. The merchandise had apparently not yet been delivered when on July 17, 1987, representatives of The Limited met with representatives of Trebor and Rotano and informed them that no further merchandise would be forthcoming from The Limited until payment was received for the merchandise already delivered, and that any further merchandise they purchased would have to be paid for upon receipt of the goods. Trebor and Rotano on the same day agreed to pay The Limited $2,002,923; approximately $1.3 million of that July 17 payment was for earlier amounts owed The Limited, and the remaining $700,000 was paid "on account," to be credited towards the merchandise from the July invoices (all of which apparently was delivered to Trebor and Rotano). Trebor subsequently paid a further $500,000 "on account" while this litigation was pending. Thus, of the merchandise delivered on the July invoices, which cost approximately $6.2 million, Trebor and Rotano owed approximately $5 million, plus interest, at the time of the district court's judgment.

The Limited's July 17 demand for payment had almost immediate repercussions. Four months earlier, Rotano had received goods worth $423,102.75 from Limited Express. Rotano had paid $171,321.50 of that

amount by a check to Limited Express dated July 2, 1987, but in the wake of the July 17 meeting with The Limited, Rotano stopped payment on the check on or about July 23, 1987.

Approximately seven days later, William K. Gerber, the vice president and controller of The Limited, sent a cover letter and draft agreement (the "July 30 Documents") to Robert Falus, president of Trebor and Rotano. In relevant part the letter stated:

> Enclosed is a draft agreement between our companies that can resolve the current issues and allow us to go forward with our business relationship.
>
> We believe the proposal is fair, and your prompt attention is requested. Please approve the agreement and return one copy to me so that we may move forward.
>
> Robert, we must resolve this issue without further delay. I must emphasize that failure to reach an agreement or at least bargin [sic] in good faith, will leave The Limited with no alternative other than immediate legal action.

The draft agreement read as follows:

> AGREEMENT FOR MERCHANDISE SHIPMENT AND PAYMENT BETWEEN THE LIMITED STORES, INC. AND
>
> TREBOR SPORTSWEAR CO., INC.
>
> ROTANO SPORTSWEAR CO., INC.
>
> * The parties agree that it is their mutual desire to continue the business relationship.
>
> * TREBOR and ROTANO have purchased certain merchandise from The Limited Stores, Inc.
>
> * TREBOR has received (subject to final quantity verification) merchandise valued at $4,303,638.75, against which $500,000 has been credited as partial payment. The balance currently outstanding is $3,803,638.75. (See attachment A).
>
> * ROTANO has received (subject to final quantity verification) merchandise valued at $1,931,487.00, against which $200,000 has been credited as partial payment. The balance currently outstanding is $1,731,487.00. (See attachment B).

> * The Limited Stores has remaining merchandise not yet shipped to TREBOR and ROTANO in the following approximate quantities and prices:
>
> TREBOR
>
> | | |
> |---|---|
> | 19,000 units Largo pant at $13.00 | $ 247,000 |
> | 112,00 [sic] units Striped Oxford Shirt at $9.15 | $1,024,800 |
>
> ROTANO
>
> | | |
> |---|---|
> | 16,000 units Sweatshirt at $14.50 | $232,000 |
> | TOTAL | $1,503,800 |
>
> PAYMENT AND SHIPMENT TERMS:
>
> * ROTANO/TREBOR will pay 80% of the current outstanding balance (calculated at $4,428,100) by certified check. The certified check will be transmitted to a third party law firm acting as trustee. This third party law firm will be selected by mutual agreement of the counsel of The Limited Stores and TREBOR/ROTANO.
>
> * The trustee will inform The Limited Stores that the certified check has been received. The Limited Stores will immediately initiate shipment of the remaining merchandise to warehouse locations as designated by TREBOR/ROTANO.
>
> * Upon confirmation of the shipment of the merhcandise [sic] the trustee will release the certified check to The Limited Stores for immediate deposit.
>
> * The balance of the outstanding debt ($1,107,025 + $1,503,800) will be payable by certified check 30 days from shipment of the remaining merchandise.
>
> * In addition ROTANO owes The Limited Express $423,102.75. This complete balance will be paid by certified check within 10 days from shipment of the remaining Limited Stores merchandise.
>
> * The Limited Stores will grant to TREBOR/ROTANO a "Right of First Refusal" on future sell-offs of merchandise for an initial time period of one year. This right of first refusal will be defined as offering for bid by TREBOR/ROTANO all sell-off merchandise which The Limited

may have interest in disposing of through the secondary market.

\* This Agreement embodies all obligations and understandings of the parties on this matter and incorporates all prior negotiations and understandings between the parties.

Trebor and Rotano chose not to accept The Limited's offer and commenced an action in state court on July 31, 1987. The complaint in that action alleged, *inter alia*, that The Limited had agreed in the spring of 1987 to sell Trebor and Rotano $10 million worth of women's apparel; that The Limited had delivered only $7 million worth of apparel; and that The Limited had unjustifiably failed and refused to deliver the balance. On grounds of diversity, The Limited thereafter removed this case to federal court and asserted counterclaims totaling $3,303,638.75 against Trebor, and $2,154,589.75 against Rotano, for goods which The Limited had delivered to them but for which payment had not been made.

The Limited moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56. Following a hearing held on January 12, 1988, Chief Judge Brieant granted summary judgment in favor of The Limited in all respects.

In granting summary judgment on The Limited's counterclaims, the district court noted that appellants had not disputed those counterclaims for current liabilities. The court then proceeded to consider Trebor and Rotano's claims and held that they were barred by the statute of frauds because documents on which appellants founded their claims—the July 30 Documents—failed to "describe all of the elements of a relationship [and were] unclear as to duration." Moreover, the court found that, even had the July 30 Documents met the statute of frauds, they were "probably privileged as an offer to settle a dispute, and [thus] inadmissible under [Rule 408 of] the Federal Rules of Evidence." Accordingly, the court granted appellee's motion for summary judgment and dismissed the amended complaint.

On appeal, appellants Trebor and Rotano have conceded the merit of The Limited's counterclaims. *See* Appellants' Brief, at 22. However, they raise both evidentiary and substantive objections to the district court's disposition of their claims. Appellants argue that their claims should not have been summarily dismissed because the July 30 Documents were admissible, and thus that the appellants had met their burden of production on the statute of frauds requirement as parties opposing the motion for summary judgment. They further contend that, because the course of dealing between the parties had established a credit relationship between them, The Limited had no right on July 17, 1987 to threaten that no further merchandise would be delivered until the outstanding invoices were paid, and to demand that in the future merchandise be paid for upon receipt. Finally, appellants allege that The Limited wrongfully withheld merchandise which, according to appellants, The Limited had agreed to offer to appellants on a right-of-first-refusal basis.

## DISCUSSION

### I. *The Exclusion of the July 30 Documents Under Federal Rule of Evidence 408*

The Limited's motion for summary judgment was grounded, essentially, on the statute of frauds. The Limited argued that, because there was no written memorandum of any agreement between The Limited and appellants Trebor and Rotano, the appellants' claims were not enforceable.

Once The Limited's argument was made, and was supported by its submissions on the motion, the burden of production shifted to Trebor and Rotano. Under New York law, which the parties do not dispute is applicable, appellants would have borne the burden of overcoming any statute of frauds requirement at trial. *See, e.g., DDP Microsystems, Inc. v. Tilden Fin. Corp.*, 88 A.D.2d 875, 451 N.Y.S.2d 778, 779–80 (1st Dep't 1982); *Cohn v. Geon Intercontinental Corp.*, 62 A.D.2d 1161, 1161, 404

N.Y.S.2d 206, 208 (4th Dep't 1978). Therefore, in order to survive The Limited's motion for summary judgment, it was incumbent upon appellants to identify sufficient admissible evidence of an agreement so as to demonstrate that there existed a genuine issue of material fact regarding the alleged agreement. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Union Ins. Soc. v. William Gluckin & Co.*, 353 F.2d 946, 952 (2d Cir.1965) (evidence relied upon in affidavits in opposition to summary judgment must be admissible); Fed.R.Civ.P. 56(e) ("[s]upporting and opposing affidavits ... shall set forth such facts as would be admissible in evidence").

In opposing The Limited's motion, appellants relied almost entirely on the July 30 Documents as written evidence of a contract between the parties. The July 30 Documents, however, were disregarded by the district court under Rule 408 of the Federal Rules of Evidence because they constituted inadmissible evidence of a settlement offer.

In furtherance of the public policy of encouraging settlements and avoiding wasteful litigation, Rule 408 bars the admission of most evidence of offers of compromise and settlement. *See, e.g.*, Fed.R. Evid. 408 advisory committee's note; 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 408[01], at 408–09 to 408–10 (1988); 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5302 (1980). But that bar is not an absolute one. Evidence of an offer to compromise, though otherwise barred by Rule 408, can fall outside the Rule if it is offered for "another purpose," *i.e.*, for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle. *See* Fed.R.Evid. 408.

■ Herein, Trebor and Rotano argue that their claims against The Limited for breach of contract had not been raised as of July 30, 1987, and that the "claims" the July 30 Documents were meant to settle were thus not the claims in dispute before the district court, and that therefore the Documents were admissible to prove these

"other" claims. In our view, the evidence belies this contention. Appellants acknowledge that, on or about July 23, 1987, they stopped payment on a July 2, 1987 check to Limited Express in response to The Limited's "repudiation of its obligations to Trebor" on July 17. Appendix for Plaintiffs–Appellants, at 142a. Moreover, the July 30 letter from The Limited referred to the "current issues"—not just the single issue of overdue payments—outstanding between the parties. From this, it can be concluded that the July 30 Documents were intended (at least in part) to settle the claims of contractual breach that arose because of the events of July 17th, and which were at the heart of appellants' action before the district court. That being so, the documents were properly excluded under Rule 408, since they were not admissible to prove the validity of those claims.

■ Appellants urge that they sought to introduce the documents only in order to meet the statute of frauds. However, such a proffer presents two conflicting goals: proving the existence of a contract in compliance with the statute of frauds and overcoming the strictures of Rule 408. For appellants, satisfying the statute of frauds was the necessary first step to proving, ultimately, the validity of their claims of breach of contract. Since the two questions were so closely intertwined, admission of the documents even initially for the purpose of meeting the statute of frauds requirement would, under the circumstances of this case, militate against the public policy considerations which favor settlement negotiations and which underlie Rule 408. *Cf. Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 655 (4th Cir.1988) (settlement offer from closely related litigation was properly excluded from evidence). One treatise on evidence cautions:

> [C]are should be taken that an indiscriminate and mechanistic application of this "exception" to rule 408 does not result in undermining the rule's public policy objective.... The [court] should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations.

2 J. Weinstein & M. Berger, *supra,* ¶ 408[05], at 408–31.

As a general proposition, a trial court has broad discretion as to whether to admit evidence of settlement negotiations offered for "another purpose." Absent an abuse of discretion "amounting to manifest error," we are not apt to reverse a district court's determination as to whether proffered evidence of settlement negotiations comes within this exception to Rule 408. *See Fiberglass Insulators,* 856 F.2d at 654; *Bituminous Constr., Inc. v. Rucker Enters., Inc.,* 816 F.2d 965, 968 (4th Cir.1987); *Belton v. Fibreboard Corp.,* 724 F.2d 500, 505 (5th Cir.1984); *Reichenbach v. Smith,* 528 F.2d 1072, 1074–75 (5th Cir.1976). We believe the district court did not abuse its discretion in barring admission of the July 30 Documents.

## II. *Summary Judgment Was Properly Granted*

■ The district court granted summary judgment to appellee, after having found 1) that the July 30 Documents were insufficient to satisfy the statute of frauds, and, even if sufficient, 2) that this evidence was inadmissible under Federal Rule of Evidence 408. In short, the district court concluded that appellants failed to demonstrate that there existed any admissible memorandum of agreement sufficient to support appellants' claims.

The appellants' opposition to The Limited's motion for summary judgment was largely based on the July 30 Documents, which, they contended, were sufficient to satisfy the statute of frauds. With the exclusion of the July 30 Documents, appellants offered no basis upon which to meet the requirements of the statute of frauds.[1] Evidence of a written agreement sufficient to meet the statute of frauds was an essential element of appellants' case and, having failed to "designate 'specific facts showing there [was] a genuine issue for trial' " regarding that element, appellants failed in their burden of production. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553;

*see also id.* at 331–32, 106 S.Ct. at 2557–58 (Brennan, J., dissenting). Addressing a similar issue, a New York court stated:

> The defendant's parol recitation of the … contract … was not admissible, as the Statute of Frauds requires a writing for any contract concerning the sale of goods in excess of $500 to be enforced. In light of the failure of the defendant to submit evidentiary proof in admissible form …, it has not made a sufficient showing to defeat the plaintiff's motion for summary judgment.

*Lighting Horizons, Inc. v. E.A. Kahn & Co.,* 120 A.D.2d 648, 649, 502 N.Y.S.2d 398, 399 (2d Dep't 1986) (citations omitted). The district court was correct, therefore, in awarding summary judgment in favor of The Limited.

## III. *Appellants' Opportunity for Discovery*

■ Finally, we must address appellants' claim that the district court did not allow them adequate discovery, and that they therefore were unjustly deprived of the ability to meet their burden of production under Federal Rule of Civil Procedure 56.

Under Rule 56(f), summary judgment "may be inappropriate where the party opposing it shows … that he cannot at the time present facts essential to justify his opposition." Fed.R.Civ.P. 56(e) advisory committee's note (1963). The nonmoving party should not be "railroaded" into his offer of proof in opposition to summary judgment. *See Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554–2555. The nonmoving party must have "had the opportunity to discover information that is essential to his opposition" to the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986). But the trial court may properly deny further discovery if the nonmoving party has had a fully adequate opportunity for discovery. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290–99, 88 S.Ct. 1575, 1593–98, 20 L.Ed.2d 569 (1968); *Bur-*

---

**1.** Whether the invoices that passed between the parties would have satisfied the New York stat- ute of frauds, N.Y.U.C.C. § 2–201, is not a question we are called upon to decide.

*lington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 927–28 (2d Cir.1985). From the record, it appears that appellants had ample time to conduct discovery. Moreover, as the district court noted, appellants Trebor and Rotano proffered no persuasive basis for the district court to conclude that further discovery would yield proof of a written agreement that would satisfy the statute of frauds, which was, after all, the nub of the appellee's motion for summary judgment. The district court was therefore correct in denying Trebor and Rotano's request for further discovery.

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of appellants' amended complaint on appellee's motion for summary judgment, and we affirm the district court's grant of summary judgment on appellee's counterclaims against appellants Trebor and Rotano.

OAKES, Circuit Judge (dissenting):

I would reverse and remand the summary judgment dismissing the plaintiffs' claim for damages.

The district court granted The Limited's motion for summary judgment and dismissed Trebor's and Rotano's complaint because it concluded appellants "can't win this case as matter of law," citing Trebor's and Rotano's supposed inability to satisfy the New York statute of frauds. N.Y.U.C. C.Law § 2–201. This conclusion was, in my view, erroneous.

To satisfy the statute, a party need only (1) produce a writing, (2) signed by the party to be charged, which (3) recites a quantity term, as indicia that a contract has been made. J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 58, 61 (1980) ("White & Summers"). It is unnecessary that the writing state all the terms of the contract or that it state them accurately. *Id.* at 58. Here, the July 30 draft agreement was signed by The Limited and contains a number of quantity terms. The agreement (and the accompanying letter) also contains

a reference to the "mutual desire to continue the business relationship," which is further indication of an ongoing contractual relationship. *Cf. Gestetner Corp. v. Case Equip. Co.,* 815 F.2d 806, 809–10 (1st Cir. 1987) (failure to answer letter referring to "continuing role as exclusive dealer" satisfied Maine statute of frauds). At the very least, the draft agreement is sufficient to satisfy the statute as to the $1,503,800 worth of identified merchandise described in the agreement and make the contract enforceable to that amount. *See* White & Summers 59–60.

The question is then whether the July 30 letter and draft agreement are admissible under Fed.R.Evid. 408. That rule protects from discovery certain statements and conduct presented in the course of compromise negotiations. The district court stated that The Limited documents were "probably" so privileged. However, the rule protects only compromise negotiations surrounding a "claim which was disputed as to either validity of amount," making such evidence inadmissible "to prove liability for or invalidity of the claim or its amount." Fed.R. Evid. 408. According to counsel for The Limited, "[h]ere there is only one dispute, whether or not Trebor and Rotano owed the limited [*sic*]." Trebor and Rotano never contested the validity of The Limited's claim or the amounts owed for delivered merchandise. Rather, their claims are for breach of their oral agreement with The Limited as to credit terms and the terms on which future deliveries of goods were to be made. They seek admission of the memoranda not to prove the validity or amount of either claim (that is, the *terms* of the contract), but merely to satisfy the statute of frauds. *Cf.* 2 *Weinstein's Evidence* § 408[05] at 408–32 (1988):

In other cases, such evidence has been admitted to prevent abuse of the general exclusionary rule and its policy of promoting compromises. The existence of negotiations for compromise is admitted to negate a contention of lack of due diligence in presenting a claim, or to show that the real party in interest had already settled with the defendant all

claims outstanding from the transaction. It would also be permissible to show, under the statute of frauds, that a debt was revived by acknowledgment or that, pursuant to a statute of limitations, the presumption of satisfaction of a judgment has been rebutted.

(Footnotes omitted.) Satisfaction of the statute would permit appellants to offer parol evidence of the existence and terms of its alleged oral agreement with The Limited. This, of course, does not mean necessarily that Trebor and Rotano can succeed on these claims:

> A plaintiff who wants to enforce an alleged oral contract and who can hold up a memo satisfying 2–201(1) does not necessarily have much to write home about. A complying memo is not boon in the way a noncomplying memo is bane. Absent applicable exceptions, the plaintiff simply loses if he fails to produce a complying memo. But a complying memo is not equivalent to victory.... And whether sketchy or not, the theory is that a complying memo itself is not conclusive proof of the existence of the oral contract, let alone of its terms. Beyond producing a memo "sufficient to indicate that a contract for sale has been made between the parties," the plaintiff must still persuade the trier of fact that the parties did make an oral contract and that its terms were thus and so. By parity of analysis, a defendant who unsuccessfully pleads the defense of the statute of frauds may still "defend on the facts" and prevail, that is, he may still persuade the trier of fact that no contract was ever made.

White & Summers 56–57 (footnote omitted).

Accordingly, I would reverse and remand for further proceedings.