JOSEPH L., Plaintiff,

v.

**CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES**

and

**Darlene Dunbar, in her official capacity as Commissioner of the Connecticut Department of Children and Families, Defendants.**

**Civil No. 3:03CV1745 (DJS)(TPS).**

United States District Court, D. Connecticut.

March 1, 2005.

**332**

Catherine A. Holahan, Connecticut Legal Services, Inc., Stamford, CT, for Plaintiff.

John Essex Tucker, Attorney General's Office, Hartford, CT for Defendants.

*RECOMMENDED RULING ON DEFEN-DANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S SECOND MOTION FOR CLASS CER-TIFICATION*

SMITH, United States Magistrate Judge.

The plaintiff, Joseph L. ("Joseph"), commenced this action against the defendants, The Connecticut Department of Children and Families ("DCF") and Darlene Dunbar, in her official capacity as Commissioner of DCF, alleging failure to provide adequate housing, food, and clothing while in the care of DCF, which illegally withheld his Supplemental Security Income ("SSI") checks, and failure to provide the plaintiff, and other individuals similarly situated, notice and opportunity for a hearing to challenge the DCF's actions. Pending before the court is the defendants' Motion for Summary Judgement (**Dkt.# 43**) and the plaintiff's second Motion for Class Certification (**Dkt.# 52**). For the reasons set forth below, the defendants' motion should be **GRANTED** and the plaintiff's motion **DENIED.**

1. The building in question is referred to in the defendants' memoranda as "the YMCA" or "the YMCA in Willimantic" because it was formerly the YMCA and is currently owned by the same private landlord. (Defs.' Mem. Supp. Summ. J. Ex. H, Tigeleiro Dep., at 62). Attorney Douglas Crockett also referred to this building as "the YMCA in Willimantic" and the "YMCA" in the plaintiff's complaint. (Compl.Attach.A–1, A–5).

## I.  STATEMENT OF FACTS

From the record, the following material facts are undisputed. Joseph was born on November 1, 1983 and committed to DCF for a portion of his childhood due to mild mental retardation and emotional problems in accordance with section 46b–129 of the Connecticut General Statutes. (Defs.' Local Rule 56(a)(1) Statement ¶¶ 1–3). After he turned eighteen, he continued to receive DCF services. (Pl.'s Local 56(a)(2) Resp. ¶ 4). Due to his dual diagnosis, Joseph remained the responsibility of DCF until he turned twenty-one years old, at which time he became the responsibility of the Department of Mental Retardation ("DMR"). (Compl.¶ 18).

From approximately August of 2001 to March of 2003, Joseph was placed unsuccessfully at three different foster homes. (Pl.'s Local 56(a)(2) Resp. ¶ 7). His last foster home refused to take him back and he resisted attempts to place him temporarily in an adult shelter. (*Id.;* Defs.' Mem. Supp. Summ. J. at 2). On March 11, 2003, either on his own or through his one-to-one service provider, Joseph requested that DCF pay for shelter at a former YMCA.[1] (Pl.'s Local 56(a)(2) Resp. ¶ 8; Defs.' Mem. Supp. Summ. J. Ex. G, Tigeleiro Aff. ¶ 4). Thereafter DCF paid for a room at the former YMCA in Willimantic, Connecticut where Joseph temporarily resided from approximately March 11, 2003 to July 14, 2003, during which time he also occasionally stayed with his aunt. (Pl.'s Local 56(a)(2) Resp. ¶ 10; Defs.' Mem. Supp. Summ. J. Ex. H, Tigeleiro Dep., at 130–31). This was an interim living arrangement until services became available at Reliance House, a social services agency in Norwich, Connecticut that the plaintiff agreed could help transition him to independent living. (Pl.'s Local 56(a)(2) Resp. ¶¶ 9 & 11).

Plaintiff's opposing memoranda, however, refer to Joseph's interim housing as the "Hotel Hooker annex" because it is across the street from the "notorious Hotel Hooker" and operated by the same private landlord. (Pl.'s Mem. Opp'n Mot. for Summ. J. at 4). The court believes the term "former YMCA" to be correct in fact, as well as in tone, for the purposes of this ruling.

In a letter dated March 27, 2003, the plaintiff, through his counsel, Attorney Douglas Crockett of Connecticut Legal Services, expressly requested a treatment plan hearing to challenge DCF's alleged failure to provide adequate food, clothing, housing, phone access, spending money, and supportive staff on a regular basis in placing the plaintiff temporarily at the former YMCA in Willimantic.[2] (Compl.Attach.A–1). The Director of Administrative Law Policy, Thomas DeMatteo, exercised his discretion and scheduled an administrative hearing to give the plaintiff an opportunity to be heard on his problems with DCF despite section 17a–15 of the Connecticut General Statutes, which limits entitlement to treatment plan hearings to "[a]ny child or youth" under DCF supervision, and not to recipients of DCF services who are nineteen years or older.[3] (Pl.'s Local 56(a)(2) Resp. ¶ 14). DCF tried unsuccessfully to dismiss the hearing request on this ground. (*Id.* ¶ 18). The plaintiff received notice that a hearing was scheduled for May 12, 2003. (*Id.* ¶ 17). The hearing commenced on that date, and was continued to May 30, 2003. (*Id.*). Among the relief requested by plaintiff's counsel at this hearing was that Joseph be lodged in a motel in a different part of town. (Defs.' Mem. Supp. Summ. J. Ex. O, Admin. Hearing Transcript, 5/30/03, at 6–7). Plaintiff's counsel also raised the issue of whether Joseph was entitled to payment for past withholding of

SSI checks. (*Id.* at 19–20). The hearing officer issued a decision on June 6, 2003, in which he dismissed the plaintiff's request and refused to allow him to present additional evidence, holding that:

> [The plaintiff] is seeking a treatment plan remedy that would direct the Department to pay for him to live in a motel until he is able to reside at the Reliance House. Such a remedy is not within the range available for treatment plan hearings. It would be different if [the plaintiff] was requesting to be placed at a different shelter or other approved facility. [The plaintiff] has also requested that his Social Security Income checks be forwarded directly to him. That issue is a monetary issue that is not within the purview of Treatment Plan Hearings. Because of the foregoing, the request for a Treatment Plan Hearing is denied and the June 9, 2003 hearing date is cancelled.

(Compl.Attach.A–6).

On June 11, 2003, Attorney Crockett filed an application for a temporary injunction in state court requesting "that the court order the DCF to comply with its legal obligation to provide him with an appropriately supported community-based placement." (Pl.'s Mem. Opp'n Mot. for Summ. J. Ex. 12, Appl. for Temp. Inj., at 1–2). However, the plaintiff never pursued this application or any other relief in state superior court.[4] (Pl.'s Local 56(a)(2) Resp. ¶ 21).

---

**2.** At the time, the nearby Hooker Hotel was known as a center for drug and prostitution activity in Willimantic, and Joseph's accommodations at the former YMCA may well have been substandard. (Pl.'s Mem. Opp'n Mot. for Summ. J. Ex. 27, Hartford Courant Article, 6/28/03; Ex. 3, Anello Aff., ¶¶ 9–11, 14–18).

**3.** The DCF hearing system consists of essentially two types of hearings that are governed by state statute: treatment plan hearings and fair hearings. Treatment plan hearings are provided for under section 17a–15(c) of the Connecticut General Statutes and are afforded to "[a]ny child or youth or the parent or guardian of such child or youth aggrieved by any provision of a [treatment] plan ...." § 17a–15(c) Conn. Gen.Stat. "Child" is defined as "any person under sixteen years of age" and "youth" is defined as "any person at least sixteen years of age and under nineteen years of age." *Id.* §§ 17a–1(5) & (6); *see also* § 17a–15–4. Fair hearings, by contrast, are afforded to "[a]ny client aggrieved by a decision of the Department with respect to actions taken

under section 3 of these regulations...." *Id.* § 17a–90–6. "Client" is defined as "a youth 16 to 18 years of age, parent, guardian or other caretaker." *Id.* § 17a–90–2(d). Fair hearings, despite the apparent age limitation, are available to "[a] parent, guardian, other caretaker, or client age sixteen (16) years *or older* ... when that person is aggrieved by the Department's denial, suspension, reduction or discontinuance of a cash benefit or a vendor payment on behalf of the client." (Pl.'s Mem. Supp. Mot. for Class Ex. 7, DCF Policy Manual on Fair Hearings, 22–4–2) (emphasis added). This is confirmed by Attorney Mark Katz, who, when asked by the plaintiff's counsel to review documents pertaining to DCF's hearing decisions, found that fifty-six of seventy-two fair hearing decisions rendered from May 15, 2000 to March 29, 2004 concerned persons in DCF care aged eighteen or older. (*Id.* Ex. 4, Katz Aff. ¶¶ 5–6).

**4.** In a letter to Judge Michael Mack of the Superior Court for Juvenile Matters dated July 9, 2003, Attorney Crockett stated that "[t]he parties

**334**

On July 14, 2003, Joseph began receiving services from Reliance House, and received such services until he passed from DCF's care at the age of twenty-one on November 1, 2004. (*Id.* ¶ 22). For the time period relevant to this complaint, DCF was the representative payee for the plaintiff as designated by the Social Security Administration ("SSA"), during which time DCF allocated spending money and other benefits to Joseph. (*Id.* ¶¶ 23–24). The plaintiff took no action to have DCF removed as representative payee or to have the SSA review the situation. (*Id.* ¶ 27).

## II. STANDARD OF REVIEW

The standards governing summary judgment are well-settled. Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the burden of demonstrating a lack of genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for the motion."); *FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). If the moving party bears the ultimate burden of proof at trial, the standard is more stringent. *See Celotex,* 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting); *Nat'l State Bank v. Fed. Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992) (bank alleging breach of duty of care has to clearly establish failure on defendant's part in handling of checks).

The court must view all the evidence presented by the moving party in light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If evidence exists from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir.1996).

Once the moving party has satisfied its burden of production, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The nonmoving party must identify specific facts requiring trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548 ("Rule 56(e) ... requires the moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial' "); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (a nonmoving party "may not rest upon the mere allegations or denials of his pleadings but ... must set forth specific facts showing that there is a genuine issue for trial"); *Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (citations omitted). *See also Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114–1115 (2d Cir.1988) (the nonmoving party must present "concrete evidence from which a reasonable juror could return a verdict in [plaintiff's] favor").

## III. DISCUSSION

■ The plaintiff alleges that he was deprived of a hearing to contest his interim living situation while he and DCF awaited the agreed upon services at Reliance House to become available. The plaintiff seeks injunctive and declaratory relief, requesting that the defendants be ordered

are in agreement that the Application for a Temporary Injunction should be marked off today. It appears that the matter has been resolved amicably. There are still details to be worked

out so that it would be premature to withdraw the Application at this time." (Defs.' Mem. Supp. Summ. J. Ex. L).

to comply with the Fourteenth Amendment of the United States Constitution and Article First, § 8 of the Constitution of Connecticut by providing the Plaintiff and members of Plaintiff's class with notice and the opportunity for a due process hearing to challenge the termination and denial of essential services and property[,]

(Compl.¶¶ 47–48), and that a declaratory judgment be entered by the court that the defendants violated the same. (*Id.* ¶ 49). The defendants move for summary judgment in part on the ground that the plaintiff's claims are moot. "Because the plaintiff is now twenty-one and has no current relationship with DCF, there is no injunctive or declaratory relief directed against DCF that could affect Joseph. Thus, there is no live controversy between the parties." (Defs.' Mem. Supp. Summ. J. at 8).

"[T]he mootness doctrine is based upon the case or controversy requirement of Article III of the Constitution." *Fox v. Bd. of Trs.*, 42 F.3d 135, 140 (2d Cir.1994). "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). In other words, the plaintiff must have a personal stake in the litigation. *Id.* For instance, courts have held that students' claims for declaratory and injunctive relief against universities are mooted by the students' graduation. *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir.1993); *Alexander v. Yale Univ.*, 631 F.2d 178, 183–84 (2d Cir.1980). Moreover, "[a] case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir.1998).

As acknowledged by the plaintiff in his complaint, the interagency agreement between DCF and DMR stipulates that "DCF will be responsible for youths up to age 18, unless the youth is in school full time, in which case the responsibility will extend to age 21." (Defs.' Mem. Supp. Summ. J. Ex. C, Interagency Agreement, ¶ B–5; *see also* Compl. ¶ 18). Joseph is now twenty-one years old. DCF, the agency being sued in this case, no longer has responsibility for him. Thus, the injunctive and declaratory relief sought against DCF and its commissioner pertaining to "essential services" will have no effect whatsoever on Joseph. Furthermore, Joseph began receiving services from the agreed upon provider, Reliance House, before the present action was filed. Attorney Crockett had sought temporary injunctive relief in state court, but did not pursue the action, telling Judge Mack that the application for a temporary injunction should be "marked off" and that "[i]t appears that the matter has been resolved amicably." (Defs.' Mem. Supp. Summ. J. Ex. L).

Moreover, the "[p]laintiff agrees with defendants that he can no longer seek individual relief on his hearing issues relating to the treatment and placement provided to him by DCF[,]" concurring that "[t]hey are indeed not capable of repetition because the plaintiff has aged out of his entitlement to DCF care." (Pl.'s Mem. Opp'n Mot. for Summ. J. at 20). With this concession by the plaintiff, the defendants have satisfied their burden of showing a lack of genuine issue of material fact. The plaintiff's claims for injunctive and declaratory relief on his hearing issues relating to "essential services" are moot, and the defendants' Motion for Summary Judgment, in relation to these claims, is **GRANTED**.

The plaintiff argues that DCF's refusal to grant him a hearing to determine whether DCF improperly withheld his SSI monies constitutes an injury sufficient to confer standing and defeat the defendants' Motion for Summary Judgment, and, in the alternative, that even if the individual claims are moot, the allegations made in the pending Motion for Class Certification (**Dkt.# 52**) meet the standing requirement since there might be a member of the purported class whose claims are not moot.[5] (Pl.'s Sur–Re-

---

5. Mootness and standing are closely related doctrines. "Standing doctrine addresses whether, at the inception of the litigation, the plaintiff had suffered a concrete injury that could be redressed by action of the court. Mootness addresses whether the plaintiff continues to have such a

ply Opp'n Mot. for Summ. J. at 3–4; Pl.'s Mem. Opp'n Mot. for Summ. J. at 20–24). The court will take up these issues in turn.

## A.

■ The defendants move for summary judgment on the ground that "the named defendants in this action are the State of Connecticut and the Commissioner of DCF in her official capacity. Any claim for money damages for the allegedly wrongful retention of social security funds is barred by sovereign immunity." (Defs.' Reply Br. Supp. Summ. J. at 3).[6] The plaintiff responds that he "is not seeking money damages. Instead he is seeking relief in the form of a due process hearing to determine whether DCF wrongfully withheld his income. Whether DCF has wrongfully withheld plaintiff's income is a question to be decided at a hearing should plaintiff prevail in this action." (Pl.'s Sur–Reply Opp'n Mot. Summ. J. at 4).

The defendants point out that "because social security is a federal program, DCF does not have a hearing process specifically directed to social security issues." (Defs.' Reply Br. Supp. Summ. J. at 4). The type of proceeding expressly requested by the plaintiff was a treatment plan hearing, a hearing governed by state statute that deals specifi-

cally with the appropriateness of a treatment plan.[7] (Compl.Attach.A–1). The reason the plaintiff was not allowed to present evidence relating to the defendants' alleged improper withholding of SSI checks was because the hearing officer concluded that he was not, in his judgment, empowered to order the requested relief. (Compl.Attach.A–6). This conclusion is supported by the sworn testimony of Margaret Glinn, Fiscal Administrative Manager at DCF. When asked at her deposition whether DCF as representative payee was even allowed to release SSI monies directly to a child in its care, Ms. Glinn replied that while it used to be their practice in the past to release the funds to a third party such as an adoptive parent or a child who was of age, "in October of 2002 ... we changed our practice to only release the funds back to the Social Security Administration so that they could disperse it to the appropriate party." (Defs.' Mem. Supp. Summ. J. Ex. F, Glinn Dep., at 31). "The change was actually made because we were informed by Social Security that's how we should be doing it, so we did it."[8] (Id. at 32). Thus, even if the hearing officer allowed the plaintiff's counsel to present evidence to support his claim that DCF was improperly withholding the plaintiff's SSI funds, the hearing officer still was not, in his judgment,

stake throughout the course of the litigation. The Supreme Court has described the doctrine of mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " *Utah Animal Rights Coalition v. Salt Lake City Corp.,* 371 F.3d 1248, 1263–64 (10th Cir.2004) (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)).

6. The Eleventh Amendment bars claims against the state for money damages in federal court except where sovereignty is expressly and unambiguously abrogated by the legislature. *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Alden v. Maine,* 527 U.S. 706, 750, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (the Eleventh Amendment bars a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury); *New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 135 (2nd Cir.1995) ("What the [Eleventh] Amend-

ment forecloses is an award of money required to be paid from state funds that compensates a claimant for the state's past violations of federal law."). The plaintiff has not claimed that sovereign immunity has been abrogated by statute or that the State of Connecticut has consented to being sued. *See Granados v. Reivitz,* 776 F.2d 180, 183 (7th Cir.1985) (finding that the Social Security Act does not waive a state's immunity to suit in federal court).

7. *See* Conn. Gen.Stat. § 17a–15; *supra* note 4. *See also* Pl.'s Mem. Supp. Mot. for Class Ex. 7, DCF Policy Manual on Treatment Plan Hearings, 22–7–2.

8. When further asked whether there were any Social Security monies DCF owed to Joseph, Ms. Glinn replied, "Certainly not as far as I can see." (Defs.' Mem. Supp. Summ. J. Ex. F, Glinn Dep., at 98). As a practical matter such a claim would be rare since the amount of money expended on the care and treatment of a child routinely exceeds any recovery of Social Security benefits by the state. (Id. at 28–29).

empowered to order that Joseph's SSI checks be forwarded directly to him. The plaintiff, through his counsel, could have requested, in the alternative, a DCF-approved facility or placement rather than restitution of Social Security benefits, which are federally administered and for which there is no DCF hearing process. According to the hearing officer's decision and the administrative hearing transcript, that was never done. (Compl. Attach. A–6; Pl.s' Mem. Opp'n Mot. Summ. J. Ex. 8, Administrative Hearing Transcript, 5/12/03; Ex. 9, Administrative Hearing Transcript, 5/30/03).

Moreover, the court is unaware of, and the plaintiff does not cite, any statutory or regulatory authority for his claim that he is entitled to a DCF hearing on Social Security issues. If the plaintiff believed that DCF was not fulfilling its duties as representative payee, he was free to seek SSA review of the situation and have a new payee appointed. *Kriegbaum v. Katz,* 909 F.2d 70, 74 (2d Cir. 1990) ("the Social Security Administration alone has the power to enforce the duties of a representative payee through the appointment of a new payee when the current payee 'has not used the benefit payments on the beneficiary's behalf in accordance with the guidelines.' ") (quoting 20 C.F.R. § 404.2050). The plaintiff did not pursue this course of action. (Pl.'s Local 56(a)(2) Resp. ¶ 27). Accordingly, the defendants' Motion for Summary Judgment is **GRANTED** in this regard.

### B.

The plaintiff contends that even though Joseph's individual claims may be moot, there might be a member of the purported class whose claims are not moot, thus defeating the defendants' Motion for Summary Judgment. (Pl.'s Mem. Opp'n Mot. for Summ. J. at 20–24). This requires the court to rule on the plaintiff's second Motion for Class Certification (**Dkt.# 52**). The plaintiff's motion is **DENIED.**

The plaintiff seeks to establish a class consisting of "[a]ll young adults over age 18 who are receiving services from DCF and who are denied notice and opportunity for hearings when such young adults are aggrieved by any provision of their treatment plan or by any refusal of any other service from DCF." (Pl.'s Mem. Supp. Mot. for Class at 8). Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements needed in order for a party to gain class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). When determining whether class certification is applicable to a moving party, the district court must determine that the party satisfies all four of the prerequisites established by Rule 23(a). *Marisol A. v. Giuliani,* 126 F.3d 372, 375–76 (2d Cir.1997). "In addition to meeting the four conjunctive requirements of 23(a), a class action must also qualify under one of the three subdivisions of 23(b)." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (footnote omitted). The plaintiff claims that the present action satisfies Rule 23(b)(2), which states that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief to corresponding declaratory relief with respect to the class as a whole...." Fed.R.Civ.P. 23(b)(2).

Beginning with the first requirement of Rule 23(a), the plaintiff must show that the class size makes joinder impracticable, as the focus of the "numerosity" requirement is on the issue of the practicability of joinder rather than the possibility. *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). The plaintiff claims that the proposed class consists of "all of the young adults over age 18 who are in DCF's care and who are denied notice and opportunity for a due process hearing to challenge the failure of DCF to provide of [sic] essential services and property." (Pl.'s Mem. Supp. Mot. for Class at 10). As best the plaintiff is able to ascertain through dis-

covery requests of the number of young adults aged eighteen years and older in DCF's care, the estimated number of proposed class members is somewhere between 1,150 and 4,700. (*Id.*). While DCF does serve a multitude of young adults by providing them aftercare services to transition them to independent living after having been under DCF's care, that in no way means that this large grouping necessarily has anything in common with the plaintiff and the unique circumstances of his case. Plaintiff's counsel has furnished no facts to establish that any member of this group faces similar issues as Joseph. The court seriously doubts that the prerequisite of numerosity under Rule 23(a)(1) is satisfied, but refrains from making such a determination since the plaintiff's quest for class certification so clearly falls short under the commonality and typicality requirements of Rules 23(a)(2) and (3).

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A.*, 126 F.3d at 376. The prerequisite of commonality is satisfied if the proposed class members' complaints share a common question of law or fact. *Id.* The typicality requirement is met if the claims of the class representatives are indeed typical of the class, and if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir.1992)). "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

The plaintiff claims that both his and the proposed class members' injuries "stem from the common cause of DCF's unlawful action in failing to provide them with notice and opportunity for due process hearings to [sic] when they are aggrieved by any provision of their treatment plan or by any refusal of any other services from DCF for which he or she is eligible." (Pl.'s Mem. Supp. Mot. for Class at 13). The court disagrees.

■ First, the plaintiff is not a member of the proposed class, which is defined in part as "all of the young adults over age 18 who are in DCF's care...." (*Id.* at 10). As the plaintiff concedes, he "has aged out of his entitlement to DCF care." (Pl.'s Mem. Opp'n Mot. for Summ. J. at 20). Accordingly, he has no personal stake in the outcome of this litigation and cannot fairly represent the proposed class. Parties "cannot represent a class of [which] they are not a part." *Hall v. Beals*, 396 U.S. 45, 49, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) (quoting *Bailey v. Patterson*, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962)).

■ Second, although the defendants stipulate that adult recipients of DCF services are not typically afforded treatment plan hearings (Defs.' Obj. to Mot. for Class at 13), the plaintiff was nonetheless afforded an administrative hearing which was only discontinued when the hearing officer concluded that he was not authorized to grant the requested relief, i.e., placement in a motel and/or direct payment of his SSI checks. (Compl.Attach.A–6). Assuming *arguendo* that the hearing officer erred in reaching this decision, it was one that turned on the unique circumstances of the plaintiff's case. Joseph disrupted from no less than three foster homes and refused placement in an adult shelter, leaving a paucity of options before accommodations became available at the agreed upon provider, Reliance House. Moreover, Joseph requested, either himself or through his one-to-one service provider, that DCF pay for shelter in a single room at the former YMCA in Willimantic. (Defs.' Mem. Supp. Summ. J. Ex. H, Tigeleiro Aff. ¶ 4; Pl.'s Local 56(a)(2) Resp. ¶ 8). DCF thereafter paid for such a room. Thus, there are arguable defenses peculiar to the plaintiff that defeat the required commonality and typicality requirements under Rule 23(a)(2) and (3), as well as the adequacy requirement under Rule 23(a)(4). *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990)

("Regardless of whether the issue is framed in terms of the typicality of the representative's claims or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.") (citations omitted); *J.H. Cohn & Co. v. American Appraisal Assoc.,* 628 F.2d 994, 998–99 (7th Cir.1980); *see Kline v. Wolf,* 88 F.R.D. 696, 699 (S.D.N.Y.1981) ("The members of [a] class are entitled to representatives unencumbered by 'unique defenses.' ").

Furthermore, the plaintiff has provided no evidence that other members of the proposed class have been similarly aggrieved, nor has he demonstrated that there are any other cases in which it is claimed that DCF failed to provide notice and opportunity of a hearing. Likewise, the plaintiff can point to no other case in which it is alleged that DCF wrongfully withheld Social Security benefits.

The prerequisites for class certification under Rule 23(a) not being satisfied, a discussion of the additional requirement under Rule 23(b) is unnecessary.

## C.

For the foregoing reasons, the magistrate judge recommends that the defendant's Motion for Summary Judgment be **GRANTED** and the plaintiff's second Motion for Class Certification be **DENIED**. The plaintiff may timely seek review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. Fed. R.Civ.P. 72(b). Failure to do so may bar further review. 28 U.S.C. § 636(b)(1)(B); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

**IT IS SO ORDERED.**